Richard J. JOHNSON, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. CV–86–1499.

United States District Court, E.D. New York.

July 28, 1987.

---

Richard J. Johnson, pro se.

Andrew J. Maloney, U.S. Atty., Brooklyn, N.Y., Anne E. Stanley, Asst. U.S. Atty., Kenneth C. Brown, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Plaintiff, *pro se*, Richard J. Johnson ("Johnson"), brings this action alleging various common law tort and constitutional violations by the United States and Thomas P. Coleman ("Coleman"), former Internal Revenue Service ("IRS") District Director for the Brooklyn District, arising from a review of plaintiff's 1981 and 1982 income tax returns and seven W–4 forms submitted by the plaintiff between January 1981 and August 1982. Plaintiff seeks $500,000 in punitive damages for constitutional violations, $20,000 in compensatory damages, an injunction restraining the United States from assessing or collecting any tax deficiencies, fines, interest and penalties relating to his 1981 and 1982 income taxes, an order directing the IRS to issue refund checks plus interest to plaintiff for the years 1981 through 1984, and all court costs.

The defendants now move pursuant to Fed.R.Civ.P. 12(b) for an order dismissing plaintiff's complaint, or, alternatively, an order pursuant to Fed.R.Civ.P. 56 granting summary judgment to the defendants. The defendants argue *inter alia* that Johnson's claims against the United States are barred by the doctrine of sovereign immunity and the Anti–Injunction Act, 26 U.S.C. § 7421(a), and that Coleman is immune from suit for the common law tort and constitutional violations asserted by Johnson.

## FACTS

This action arises from the review by the IRS of seven Form W–4s, Employee's Withholding Allowance Certificates, submitted by Johnson and audits by the IRS of Johnson's 1981 and 1982 federal income tax returns. Johnson, who is married and has 5 children, submitted seven W–4 Withholding Certificates to his employer between January 1981 and August 1982 claiming 25, 23, 26, 26, 26, 26 and 14 withholding allowances. Johnson claims that he was entitled to the allowances listed based on his family (7 deductions) and what he claims were valid tax-deductible charitable contributions to the Universal Life Church.

The IRS notified Johnson by letter on October 30, 1981, and several additional times during the next two years that it was reviewing his W–4s and required more information to determine if the number of withholding allowances claimed was correct. Johnson responded to all of the requests and sent documents including his

marriage certificate, his children's birth certificates and copies of cancelled checks of donations made to the Universal Life Church. Based on the submitted information, between January 1982 and March 1983, the IRS adjusted the number of withholding allowances, ranging from one, two, twelve and fourteen. Plaintiff was also assessed two $500 penalties for filing false information regarding withholding allowances.[1]

Johnson wrote several times to the IRS district office, asking for an explanation for the penalties assessed. Johnson claims that his many requests for clarification or for meetings to discuss the nature of the penalties did not receive satisfactory responses.

In October 1982, Johnson received notice that his 1981 tax return would be audited, and was asked to produce documents supporting claimed charitable contributions. At the audit, which was conducted on April 13, 1983 by Revenue Agent Linda Ratushenko at the IRS district office in Brooklyn, and which concentrated on Johnson's deduction of $12,657 as a charitable contribution to the Universal Life Church, Johnson refused to answer Ratushenko's questions about the control of church funds and whether he derived any benefits from the contribution.[2] The deduction was therefore disallowed and an assessment for an additional $2,117 in tax for 1981 was made. Johnson did not petition Tax Court within the allotted 90 days for a redetermination.[3]

In October, 1985, plaintiff's 1982 federal tax return was selected for audit. The examination was conducted by mail correspondence and telephone between February 18–24, 1986, by Agent Elizabeth Helwege. As a result of supporting documentation, plaintiff's claims for a uniform deduction (plaintiff is a New York City police officer) and $157 in charitable contributions were allowed, but his deduction of $12,925 for contributions to the Universal Life Church was disallowed on the grounds that the church had lost tax exempt status and that Johnson had received a "housing allowance" benefit from the contributions.

Subsequently, Johnson requested conferences with Helwege's supervisor but these requests were denied. However, the case was forwarded to the Appeals Office in Carle Place. Appeals Officer Errol March contacted Johnson in May, 1986 to schedule a conference. Johnson replied that there was no need for an appeals conference since he had incorporated the disputed issues into this lawsuit. March then returned the case to the Brooklyn District Office for issuance of a statutory notice of deficiency. Johnson did not petition Tax Court for a redetermination during the 90 day period following.

Johnson filed the complaint in this action on May 6, 1986 claiming essentially that the IRS, Coleman and other IRS employees had conspired to deprive him of his first amendment rights by disallowing his W–4 withholding allowances and auditing his 1981 and 1982 tax returns solely because of his affiliation with and contributions to the Universal Life Church.

Plaintiff also alleges that the IRS conspired to deny him due process under the fourteenth amendment by refusing to allow him to prove his entitlement to charitable contribution deductions on his 1981 and 1982 tax returns and by failing to adequately respond to his requests for clarification. Plaintiff has not paid any of the W–4 penalties or tax deficiencies on his 1981 and 1982 tax returns. Refunds that he claims are due for 1981–1984 have been "frozen" by the IRS pending the determination of his case.

## DISCUSSION

### Request for Injunctive Relief

█ Johnson seeks an injunction restraining and enjoining the United States

---

1. Section 6682 of the Internal Revenue Code of 1954, 26 U.S.C. § 6682, provides for a $500 penalty against an individual if he provides his employer with a W–4 form "which results in a decrease in the amounts deducted and withheld" from his wages if at the time "there was no reasonable basis for such statement."

2. Under 26 U.S.C. § 170 a taxpayer is generally not entitled to a charitable contribution deduction if the taxpayer receives a financial benefit because of the contribution.

3. I.R.C. § 6213(a).

from assessing and collecting any tax deficiencies, interest or penalties arising from his 1981 and 1982 tax years (Complaint p. 15). This court is without jurisdiction to grant the injunctive relief requested. The Anti–Injunction Act, 26 U.S.C. § 7421(a) provides, with few exceptions not relevant here,[4] that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

Essentially, this statute prohibits any suit which would enjoin the assessing or collecting of taxes. Its purpose is to protect the government's ability "to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962).

■ The Anti–Injunction Act applies to any suit seeking to restrain the assessment or collection of any tax, whether the restraint is a collateral effect or the main purpose of the lawsuit. *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 760–61, 94 S.Ct. 2053, 2058, 40 L.Ed.2d 518 (1974); *Bob Jones University v. Simon*, 416 U.S. 725, 738, 94 S.Ct. 2038, 2046–47, 40 L.Ed.2d 496 (1974). The constitutional nature of a taxpayer's claim is of no consequence under the Anti–Injunction Act. *Alexander v. "Americans United" Inc., supra*, 416 U.S. at 759, 94 S.Ct. at 2058; *Jacobson v. Organized Crime and Racketeering Section of the United States Department of Justice*, 544 F.2d 637, 639 (2d

Cir.1976). If an action is barred by the Anti–Injunction Act the District Court lacks subject matter jurisdiction and the complaint must be dismissed. *Enochs v. Williams Packing & Navigation Co., supra*, 370 U.S. at 7, 82 S.Ct. at 1129.

■ The Supreme Court has given the Anti–Injunction Act almost literal effect. *Bob Jones University v. Simon, supra*, 416 U.S. at 737, 94 S.Ct. at 2046. The Court articulated the only judicially created exception to the Anti–Injunction Act in *Enochs v. Williams Packing & Navigation Co., supra*.[5] Under the *Williams Packing* exception, an injunction suit to restrain the assessing or collecting of taxes may be permitted only "if it is clear that under no circumstances could the government ultimately prevail," and "if equity jurisdiction otherwise exists," i.e., if the taxpayer can demonstrate that he would suffer irreparable harm if collection was not enjoined. *Id.* 370 U.S. at 6–7, 82 S.Ct. at 1128–29. *See South Carolina v. Regan*, 465 U.S. 367, 374, 104 S.Ct. 1107, 1112, 79 L.Ed.2d 372 (1984); *Bob Jones University v. Simon, supra*, 416 U.S. at 737, 94 S.Ct. at 2046.

■ The stringent nature of the *Williams Packing* test places a heavy burden on a taxpayer seeking to avoid the bar of the Anti–Injunction Act. *See Bob Jones University v. Simon, supra*, 416 U.S. at 737, 94 S.Ct. at 2046. The suit for injunction may be maintained only if it is clear under the most liberal view of the law and facts that the government cannot possibly establish its claim. *Enochs v. Williams Packing & Navigation Co., supra*, 370 U.S. at 7, 82 S.Ct. at 1129. The determination of whether the government has a

---

**4.** The only statutory exception which might have been relevant is set out in 26 U.S.C. § 6213(a). That section provides a 90 day limitations period for taxpayers to petition the Tax Court for redetermination of any deficiency claimed by the IRS. The IRS is prohibited from assessing or collecting taxes prior to or within 90 days of the mailing of a notice of deficiency. Johnson, however, has not charged that the government tried to collect during the ninety day period and he did not petition the Tax Court for a redetermination during that period, so he does not fall within this exception.

**5.** In *South Carolina v. Regan*, 465 U.S. 367, 372–73, 104 S.Ct. 1107, 1111, 79 L.Ed.2d 372 (1984), the Court held that the Anti–Injunction Act "was not intended to bar an action where ... Congress has not provided the plaintiff with an alternative legal way to challenge the validity of a tax." This holding is irrelevant in the present case since Johnson has alternative remedies for challenging the assessment.

chance of ultimately prevailing must be made on the basis of the information available to it at the time of the suit. *Id.*

In the instant case, Johnson claims that the government cannot ultimately prevail because it has acted in bad faith toward him. However, mere allegations of bad faith, harassment or even deprivation of constitutional rights are not sufficient to show that the government could not ultimately prevail under any circumstances. *See Alexander v. "Americans United" Inc., supra,* 416 U.S. at 759, 94 S.Ct. at 2058. Johnson's broad contentions that his first amendment and due process rights have been violated are sufficiently debatable to foreclose the conclusion that the government has no chance of success under any circumstances. *Bob Jones University v. Simon, supra,* 416 U.S. at 749, 94 S.Ct. at 2052.

Moreover, even if Johnson could establish that the government had no possible chance of succeeding on the merits, injunctive relief would still be prohibited unless Johnson establishes that equity jurisdiction exists, i.e., that the court's failure to issue an injunction order enjoining the collection or assessment of taxes will cause irreparable harm for which he has no adequate remedy at law. *Commissioner v. Shapiro,* 424 U.S. 614, 623, 96 S.Ct. 1062, 1069, 47 L.Ed.2d 278 (1976). Johnson claims he will suffer irreparable harm if the court denies him injunctive relief because he has no resources except the home he and his family live in with which to satisfy the assessments against him. Thus, Johnson claims that the legal remedy of a refund suit in the district court is inadequate because he cannot afford to "pay first and litigate later." *Flora v. United States,* 362 U.S. 145, 168, 80 S.Ct. 630, 642, 4 L.Ed.2d 623 (1960).

A similar argument was rejected by the Second Circuit in *Laino v. United States,* 633 F.2d 626 (2d Cir.1980). In *Laino,* the Second Circuit held that the adequacy of a taxpayer's legal remedies must be assessed in light of *all* the remedies afforded the taxpayer by the Internal Revenue Code. *Id.* at 629. The court held that a taxpayer could not be heard to complain that a refund suit in the District Court was an inadequate remedy at law due to the taxpayer's inability to "pay first and litigate later," where the taxpayer has failed to exhaust his legal remedies by neglecting to petition the Tax Court for a redetermination of the deficiency pursuant to I.R.C. § 6213. *Id.* at 629–30. Like the appellants in *Laino,* Johnson has not availed himself of the alternate remedy of filing a petition for a redetermination with the Tax Court. Since Johnson has failed to make use of alternate remedies, he cannot establish equity jurisdiction. *See Alexander v. "Americans United" Inc., supra,* 416 U.S. at 762 n. 13, 94 S.Ct. at 2059 n. 13 ("a taxpayer cannot render available review procedure an inadequate remedy at law by voluntarily foregoing it."). Accordingly, since Johnson has failed to establish that he falls within the narrow exception to the Anti–Injunction Act his claim for injunctive relief must be dismissed.

*Claims for Monetary Relief Against the United States*

Johnson seeks punitive and compensatory damages against the United States for alleged common law tort and constitutional violations. The doctrine of sovereign immunity bars claims against the United States for money damages except where it consents to be sued by statute. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). The terms of the government's consent define the limits of the court's jurisdiction over a suit against the government for monetary relief. *Id.* at 586, 61 S.Ct. at 770; *Solomon v. United States,* 566 F.Supp. 1033, 1034 (E.D.N.Y.1982). A waiver of sovereign immunity may not be implied but must be explicit and narrowly construed. *See Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957); *United States v. Sherwood, supra,* 312 U.S. at 590, 61 S.Ct. at 771. Without such explicit statutory consent, the United States is immune to suit; the District Court

lacks jurisdiction and the action must be dismissed. *See United States v. Testan, supra,* 424 U.S. at 399, 96 S.Ct. at 953–54.

 The United States has not waived its immunity from suit for constitutional violations. A claim for damages for alleged constitutional violations may only be maintained against those federal officials who were directly responsible. *See Butz v. Economou,* 438 U.S. 478, 504–05, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 410, 91 S.Ct. 1999, 2012, 29 L.Ed.2d 619 (1971); *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.1983). Thus, Johnson's claim against the United States for damages for alleged constitutional violations must fail.

In addition, with respect to Johnson's common law tort claims against the United States, although the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* ("the FTCA"), contains a limited waiver of sovereign immunity, Johnson's claim for damages against the United States must fail for a number of reasons.

 Section 2680(c) of the FTCA prohibits any suit against the United States "arising in respect of the assessment or collection of any tax. . . ." *See Escro Storage and Cartage, Inc. v. Frontier Distribution Line, Inc.,* 456 F.2d 182, 182 (2d Cir.1972). Thus, Johnson's request for compensatory damages is barred by the doctrine of sovereign immunity. *Davis v. United States,* 742 F.2d 171, 173 (5th Cir. 1984). Johnson's assertion that his action does not arise from assessment of taxes but from the defendants' methods and bad faith, (Plaintiff's Memorandum of Law at p. 8), is frivolous.

 Moreover, section 2680(a) of the FTCA bars any claim against the United States based on "the exercise or perform-

ance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, *whether or not the discretion involved is abused.*" (emphasis added). The evaluation of W–4 forms and the auditing of tax returns fall within the scope of authority of the Internal Revenue Service and are arguably "discretionary functions," and thus Johnson's claims against the government based upon the performance of these discretionary functions by agents of the IRS are barred by the doctrine of sovereign immunity. *See American Association of Commodity Traders v. Department of Treasury,* 598 F.2d 1233, 1235 (1st Cir.1979); *Birnbaum v. United States, supra,* 588 F.2d at 329.

 Johnson's request that the court direct the IRS to issue refund checks for the tax years 1981 through 1984 is also barred by the doctrine of sovereign immunity. Although 28 U.S.C. § 1346(a) allows a civil action for a tax refund where a taxpayer believes that an internal revenue tax or penalty was erroneously or illegally assessed or collected, it is a jurisdictional prerequisite to a refund suit in the district court that the taxpayer must first pay the full amount of the assessment and file an administrative claim before challenging its validity. *Flora v. United States,* 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958); *Altman v. Connally,* 456 F.2d 1114 (2d Cir.1972); I.R.C. § 7422(a). Johnson has failed to pay in full the two $500 W–4 penalties assessed against him and the tax deficiencies assessed as a result of the audit of his 1981 and 1982 income tax returns. Accordingly, he may not pursue a tax refund suit in District Court.

### *Claims Against Thomas P. Coleman.*[6]

 Essentially, Johnson asserts that Coleman is vicariously liable for any

---

**6.** Although Coleman is not named in the caption, he was served with a summons and complaint and is named as a defendant in plaintiff's complaint. See Complaint at p. 2 ("The above named employee of the federal agency [Coleman] is herein named as a defendant in that he caused tortuous [sic] actions against Plain-

tiff. . . ."). Although Fed.R.Civ.P. 10(a) provides that "[i]n the complaint the title of the action shall include the names of all the parties," the omission of a name from the caption is not determinative of whether a defendant is properly in a case. That determination depends upon "the allegations in the body of the complaint

wrongful conduct towards him on the part of IRS personnel at the Brooklyn District Office because Coleman was Director of that office and Coleman's preprinted signature appeared on most of the correspondence Johnson received from that office.[7] Johnson requests that "[t]he Court penalize [Coleman] to the extent it sees fit." (Complaint p. 15). In *Black v. United States*, 534 F.2d 524, 527–28 (2d Cir.1976), however, the Second Circuit rejected the theory of vicarious liability for federal officials. In *Black*, a tax preparer sued the Secretary of the Treasury, the Commissioner of Internal Revenue, the IRS District Director of the Brooklyn District and "other unknown agents" of the IRS for conducting a criminal investigation against him in a manner he claimed was based on racial discrimination. The Second Circuit affirmed the District Court's dismissal of the suit, holding that federal officials may not be sued under the doctrine of respondeat superior for allegedly unconstitutional acts of others under their supervision, but only for activities in which they were directly and personally involved. *Id. See Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). The court in *Black* explained: "In an effort to limit vexatious litigation and to minimize interference with the orderly workings of government ... the plaintiff [must] allege the defendant's direct and personal responsibility for the purportedly unlawful conduct of his subordinates." *Id.* at 527. *See also Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983) (Failure of plaintiff to point to any evidence that defendant personally deprived plaintiff of her statutory or constitutional rights, and, except for bare conclusions, to connect defendant with a conspiracy warranted entry of summary judgment for defendant).

In his complaint, Johnson bases Coleman's liability solely on his preprinted signature which appeared on correspondence, and on a newspaper interview in which Coleman said the IRS Brooklyn regional office would be investigating claims of tax exemptions on religious grounds to uncover fraud. Since Johnson's complaint fails to allege Coleman's direct personal involvement in unlawful conduct, it must be dismissed.

■ Moreover, even if we were to find that the complaint in this action states a claim against Coleman individually[8] rather than as Director under the doctrine of *respondeat superior*, Johnson's claims against Coleman must still be dismissed because Coleman is a federal official entitled to immunity from civil suit.

It is well established that government officials are absolutely immune from civil suits for common law torts based upon acts committed within the scope of their official duties which require the exercise of discretion. *See Butz v. Economou, supra*, 438 U.S. at 494–95, 98 S.Ct. at 2905; *Barr v. Matteo*, 360 U.S. 564, 574–75, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959); *Wyler v. United States*, 725 F.2d 156, 159 (2d Cir.1983); *Sprecher v. Graber*, 716 F.2d 968, 975 (2d Cir.1983); *Huntington Towers, Ltd. v. Franklin National Bank*, 559 F.2d 863, 869–70 (2d Cir.1977), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978). Thus, even if Coleman were personally involved in the evaluation of Johnson's W–4 forms or the audit of his 1981 tax return, such activities are within the scope of his official duties, I.R.C. § 7602, and, therefore, Coleman is absolutely immune from suit for any alleged common law torts based upon these activities.

In addition, Coleman is also arguably absolutely immune from liability for damages for alleged constitutional violations based upon his decision to audit Johnson's

---

and not his inclusion in the caption." *Hoffman v. Halden*, 268 F.2d 280, 303–04 (9th Cir.1959), *overruled on other grounds, Cohen v. Norris*, 300 F.2d 24, 29–30 (9th Cir.1962).

**7.** "The responsibility lies with the decision maker: the one who utilized the 'team' formulated in about 1978 (best date available) namely,

Thomas P. Coleman. Therefore, he is liable." (Complaint, Averment 11).

**8.** Agency officials named in their official capacity are granted sovereign immunity. *See Sprecher v. Graber*, 716 F.2d 968, 975 (2d Cir.1983).

tax returns and assess deficiencies and penalties against him. *See Bothke v. Fluor Engineers and Constructors, Inc.,* 713 F.2d 1405, 1410–11 (9th Cir.1983), *vacated on other grounds sub nom. Terry v. Bothke,* 468 U.S. 1201, 104 S.Ct. 3566, 82 L.Ed.2d 867 (1984); *Stankevitz v. IRS,* 640 F.2d 205, 206 (9th Cir.1981). Although the Supreme Court in *Butz v. Economou, supra,* held that as a general rule federal executive officials are entitled to only qualified "good faith" immunity for constitutional violations, the Court recognized that some officials' special functions require absolute immunity. *Id.* 438 U.S. at 508, 98 S.Ct. at 2911–12. Analogizing to the absolute immunity traditionally enjoyed by participants in the judicial process, i.e., judges, prosecutors,[9] and grand and petit jurors, the *Butz* Court held that federal executive officials who exercise discretion in deciding to initiate administrative proceedings are entitled to absolute immunity from damages liability for their part in that decision. *Id.* at 513–16, 98 S.Ct. at 2914–16. The Ninth Circuit has held that IRS officials who decided to audit a taxpayer's return and assess a deficiency were covered by "the executive-branch analog to prosecutors' quasi-judicial immunity ... outlined in *Butz ...,*" *Bothke v. Fluor Engineers and Constructors, Inc., supra,* 713 F.2d at 1411, and thus were entitled to absolute immunity for constitutional violations. *See Stankevitz v. IRS, supra,* 640 F.2d at 206.

Even if we were to hold that Coleman is entitled to only qualified immunity for constitutional violations arising from his decision to audit Johnson's tax returns and withholding statements, Johnson's claims against Coleman must still be dismissed because they are barred by the doctrine of qualified immunity. Qualified immunity protects government officials from suit for discretionary actions within the scope of duty *unless* the official knew or should have known his actions clearly violated constitutional rights. *Harlow v. Fitzgerald,*

457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. By setting an objective standard on the reasonableness of government officials' conduct, the Supreme Court hoped to limit excessive disruption of government by permitting the resolution of insubstantial claims on summary judgment. *Id.*

To grant summary judgment, a court must determine that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *Katz v. Goodyear Tire and Rubber Co.,* 737 F.2d 238, 244 (2d Cir.1984). The burden is on the moving party to show the absence of a genuine issue of material fact. Fed.R. Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Katz v. Goodyear Tire & Rubber Co., supra,* 737 F.2d at 244. To defeat the motion, the opposing party must set forth specific facts showing there is a genuine issue for trial and may not rest upon the bald assertions or denials of his pleadings. Fed.R.Civ.P. 56(e); *United States v. One Tintoretto Painting,* 691 F.2d 603, 606 (2d Cir.1982). The opposing party must provide concrete particulars, as well as supporting facts and arguments and may not merely make conclusory allegations or denials. *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980); *S.E.C. v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978); *Petrozza v. Incorporated Village of Freeport,* 602 F.Supp. 137, 142 (E.D.N.Y.1984). The court must draw all reasonable, permissible inferences and resolve ambiguities in favor of the non-moving party, *Katz v.*

---

**9.** In *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 995, 4 L.Ed.2d 128 (1976), the Supreme Court held that prosecutors were absolutely immune from civil suit for damages under 42 U.S.C. § 1983 with respect to their activities as advocates. The Court did not determine whether prosecutors enjoy absolute immunity when acting in an administrative or investigative capacity. *Id.* at 430–31, 96 S.Ct. at 995.

*Goodyear Tire & Rubber Co., supra,* 737 F.2d at 244, and the court may not actually try any issues of fact but only determine whether there *are* material issues of fact to be tried. *Id.; Schering Corp. v. Home Insurance Co.,* 712 F.2d 4, 9 (2d Cir.1983).

In this case, Johnson has failed to assert facts that would show Coleman knowingly (or unknowingly) took actions which violated Johnson's constitutional rights. Johnson alleges that Coleman is responsible for enacting "devious, calculated plans" which "deprived plaintiff of his right to express his beliefs and receive due process" (Complaint—Averment 13). Such "conclusory," "vague" or "general allegations" of constitutional deprivation are insufficient to withstand a motion for summary judgment. *See Sprecher v. Graber,* 716 F.2d 968, 976 (2d Cir.1983); *Contemporary Mission, Inc. v. U.S. Postal Service,* 648 F.2d 97, 106–07 (2d Cir.1981). Although a pro se complaint is not held to stringent standards of pleading, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), "a complaint against a federal official, given the possibility of harassment and potential for interference with critical operations of government, must be held to an exacting standard." *Frasier v. Hegeman,* 607 F.Supp. 318, 322 (N.D.N.Y.1985) (citing *Harlow v. Fitzgerald, supra,* 457 U.S. at 807–08, 102 S.Ct. at 2732–33).

Johnson claims that the degree of Coleman's personal involvement is an issue to be tried and requests discovery of material in defendants' possession which he believes will show Coleman's involvement in a conspiracy. (Plaintiff's Memorandum in Opposition to Motion to Dismiss—p. 30). The Second Circuit has held, however, that conclusory allegations together with a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is not sufficient to justify denying a motion for summary judgment under Rule 56(f). *Contemporary Mission, Inc. v. U.S. Postal Service, supra,* 648 F.2d at 107. Bare allegations of malice should not be enough to subject government officials to the burdens of broad-reaching discovery and its disruption of effective government. *Harlow v. Fitzgerald, supra,* 457 U.S. at

817, 102 S.Ct. at 2738. We are satisfied that the defendants have sustained their burden of demonstrating that no genuine issue of material fact exists in this action which would warrant a trial. Accordingly, defendants' motion for summary judgment with respect to the claims against Thomas P. Coleman is granted.

### ORDER

The Clerk is directed to enter judgment against the plaintiff Richard Johnson and in favor of the defendants, the United States of America and Thomas P. Coleman, dismissing the complaint.

SO ORDERED.