**Eugene ADAMS, Najah Adams, Plaintiffs,**

**v.**

**KANSAS STATE UNIVERSITY, Pat Bosco, Doug Ackley, Cliff Rovelto, Max Urick, Defendants.**

**No. 98 CV 5198(RO).**

United States District Court, S.D. New York.

Nov. 23, 1998.

Eugene Adams, plaintiff pro se.

Jon Wefald, defendant pro se, for Kansas State University.

Pat Bosco, Doug Ackley, Cliff Rovelto, Max Urick, defendant pro se.

## MEMORANDUM AND ORDER

OWEN, District Judge.

Plaintiff Eugene Adams and his daughter, Najah Adams, bring this action in United States District Court for breach of contract and fraud against defendant Kansas State University ("KSU"), Pat Bosco (Associate Vice President), Doug Ackley (Assistant Controller), Cliff Rovelto (Head Track Coach), and Max Urick (Athletic Director of Intercollegiate Athletics). Plaintiffs allege that Najah Adams ("Najah") attended KSU on an approved National Collegiate Athletics Association ("NCAA") track scholarship for the fall semester of 1995 which was supposed to cover tuition, fees, room, board and books. KSU withdrew the scholarship after the NCAA Initial–Eligibility Clearinghouse failed to certify Najah "because she was a nonqualifier." (Letter from Darrell Gordon of the NCAA dated July 20, 1998, attached to the Affidavit of Eugene Adams in Opposition to the Motion to Dismiss) ("Gordon Let.").[1] When KSU learned that Najah did not qualify, it revoked all financial aid and charged Najah $11,000 for tuition and expenses incurred during the fall 1995 semester.

The Complaint asserts two causes of action. Plaintiffs' first claim is that KSU had the duty to obtain all of Najah's high school records, and that defendants breached this duty "by collecting more than $6,000 from Najah and her family, causing them great hardship." (Complaint, ¶ 1a).[2] Plaintiffs'

---

1. According to the Gordon letter, Najah was not qualified to receive a NCAA scholarship because she failed both global studies and math III. However, the official clearinghouse report was not produced until October 24, 1995, after Najah's initial enrollment at KSU. (Gordon Let.).

2. The Complaint alleges that Olivia Harris, Najah's mother, paid KSU roughly $6,000 of the $11,000 in monthly installments pursuant to an agreement with KSU. (Complaint ¶ 1b). Plaintiffs claim that when Ms. Harris missed a payment, KSU demanded a lump sum payment of the balance owed before it would release Najah's

second claim is for fraud, alleging that KSU's "objective is to avoid the payment of a debt that arises out of an administrative error by the Director of Admissions ... which was illegally transferred to ... Najah Adams and her family." (Complaint ¶ 2a).

Plaintiffs seek $11,000 in actual damages and $25,000,000 in punitive damages because KSU has allegedly "put an end to [Najah's] Olympic hopes and replaced it with years of debt.... [and] has intentionally caused mental anguish and great hardship ... and should be punished." (Complaint, ¶ 4a). Plaintiffs also seek equitable relief and ask this federal Court to order KSU to release Najah's transcripts.

Defendants have moved to dismiss the claims pursuant to the Fed.R.Civ.P. 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(5) for (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction over the defendants; (3) improper venue; (4) insufficiency of service of process, and (5) lack of standing to sue. In addition, defendants claim sovereign immunity under the Eleventh Amendment. Because I find that defendants have sovereign immunity in this federal action under the Eleventh Amendment, I do not reach the other issues.

■ Plaintiff's two claims—breach of contract and fraud—both sound in state law. The United States Supreme Court has held that the Eleventh Amendment bars suits based in state law in federal court against states or state officials acting in their official capacities.[3] *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Ying Jing Gan v. City of New York,* 996 F.2d 522 (2d Cir.1993). Moreover, the "availability of immunity under the Eleventh Amendment does not depend on the nature of the function

performed by the state." *Ying Jing Gan,* 996 F.2d at 529.

■ KSU is "a state institution under the jurisdiction of the Kansas Board of Regents." *Ndefru v. Kansas State University,* 814 F.Supp. 54, 56 (D.Kan.1993). "State universities in Kansas governed by the state Board of Regents function as alter egos of the state, and thus share its Eleventh Amendment immunity." *Id.* (citing *Brennan v. University of Kansas,* 451 F.2d 1287, 1290–91 (10th Cir. 1971); *Billings, v. Wichita State University,* 557 F.Supp. 1348, 1350 (D.Kan.1983)). Because the Eleventh Amendment prohibits a suit by a private party against a state in federal court, this Court must dismiss the claims against KSU. *See Papasan v. Allain,* 478 U.S. 265, 276–77, 106 S.Ct. 2932, 2939–40, 92 L.Ed.2d 209 (1986) (holding that "absent consent, or an express congressional override, the Eleventh Amendment prohibits suit in federal court for retrospective relief against a state or an agency of the state.").

■ In addition to KSU, plaintiff has sued four individual defendants: Pat Bosco, the Associate Vice President of KSU; Doug Ackley, the Assistant Controller of KSU; Cliff Rovelto, the Head Track Coach at KSU; and Max Urick, the KSU Athletic Director of Intercollegiate Athletics. Although the original Complaint does not specifically allege that these four individuals are sued in their official capacity, all references in the complaint are limited to their actions in carrying out their official responsibilities for KSU.[4] Plaintiffs' conclusory statement that the "defendants were not acting in their official capacity when they committed crimes like breach of contract, fraud and malice," (Affidavit in Opposition to Motion to Dismiss, p. 3), is not sufficient to prove that the individual defendants were acting other than in their official capacities. *See Weissman v. Frucht-*

transcript, effectively preventing her from attending any other college. Plaintiff Eugene Adams further alleges that he "attempted to make an initial $300 payment" but was told that KSU "could only accept a full payment." (Complaint, ¶ 1c).

3. This Court does not comment on the merits of the causes of action had they been raised in state court in Kansas.

4. The Complaint alleges that these individuals are "being sued because they all had knowledge of my daughters [*sic*] existing scholarship, and they all remained silent while my daughter and her family were defrauded. All the defendants named above had a duty [to] protect the rights, not to commit crimes against the students. They were negligent and therefore liable for violation of that duty." Complaint, ¶ 4c.

*man,* 83 CIV 8958, 1986 WL 15669 (S.D.N.Y. Oct. 31, 1986) ("In sum, the allegations against all the defendants describe actions taken by them within the scope of their official duties. Plaintiffs' attempt to color those actions with conclusory ulterior motives is simply insufficient to convert them to an actionable claim.").[5]

"To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan,* 996 F.2d at 529 (citing *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). Indeed, as the Supreme Court has explained, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The named defendants therefore share KSU's Eleventh Amendment immunity to suit by a private party in a federal court.

For the reasons stated above, plaintiffs' claims against KSU and against Pat Bosco, Doug Ackley, Cliff Rovelto, and Max Urick are dismissed.

The foregoing is so ordered.

**5.** This is true even though "a pro se complaint is not held to stringent standards of pleading, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), [because] 'a complaint against a federal official, given the possibility of harassment and potential for interference with critical operations of government, must be held to an exacting standard.' *Frasier v. Hegeman,* 607 F.Supp. 318, 322 (N.D.N.Y.1985) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 807–08, 102 S.Ct. 2727, 2732–33, 73 L.Ed.2d 396 (1982))." *Johnson v. U.S.,* 680 F.Supp. 508 (E.D.N.Y.1987).