716 F.2d 968
 Fed. Sec. L. Rep. P 99,476
Benjamin G. SPRECHER, Appellant,
v.
Jacob GRABER, Andrew E. Goldstein, Stanley Sporkin, Phillip
A. Loomis, John R. Evans, Barbara S. Thomas and Steven J.
Friedman, Individually and in Their Capacities as Officers
and/or Commissioners of the United States Securities and
Exchange Commission, and the United States Securities and
Exchange Commission, Appellees.
 No. 685, Docket 82-6188.
 United States Court of Appeals,
Second Circuit.
 Argued March 24, 1983.
Decided Aug. 26, 1983.
 
 Benjamin G. Sprecher, New York City, attorney pro se.
 Linda D. Fienberg, Associate Gen. Counsel, S.E.C., Washington, D.C. (Douglas J. Scheidt, Sp. Counsel, Marianne M. Keler, Atty., S.E.C., Paul Gonson, Sol., Washington, D.C., of counsel), for appellees.
 Before OAKES, CARDAMONE and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Benjamin G. Sprecher, an attorney appearing pro se, appeals from the dismissal of his complaint alleging various instances of individual and official misconduct on the part of Securities and Exchange Commission officials and the Securities and Exchange Commission ("SEC"). The seven counts of the complaint allege seriatim: (1) that the SEC investigation of Sprecher's activities in relation to American Technical Resources, Inc. ("ATR") violated an earlier agreement under which the SEC purportedly agreed not to subpoena Sprecher absent notice and good cause; (2) that the SEC subpoena in the ATR investigation constituted harassment; (3) that the ATR investigation trenched upon the attorney-client privilege; (4) that the actions of the SEC and individual defendants caused Sprecher loss of business and damage to reputation; (5) that SEC staff attorney Jacob Graber defamed and harassed Sprecher during the course of the ATR investigation due to Graber's prejudice against Orthodox Jews; (6) that an affidavit of Assistant Regional Administrator of the SEC New York Regional Office, Andrew E. Goldstein, which formed a partial basis for the ATR investigative order, was "false and perjurious" and "intended to injure" Sprecher; and (7) that Graber attempted to suborn perjury on the part of a former president of ATR. The complaint seeks declaratory and injunctive relief as well as monetary damages.
 
 
 2
 The district court dismissed Counts 1-3 and 5 on the ground of collateral estoppel arising from Sprecher's litigation of the same claims in SEC v. Knopfler, Civ. No. M-18-304 (April 28, 1981 S.D.N.Y.), aff'd, 658 F.2d 25 (2d Cir.1981). It also dismissed Counts 4 and 5, which alleged constitutional torts, for failure to state a claim and Counts 4-7, which alleged common law torts, on grounds of official immunity as to the named plaintiffs, sovereign immunity as to the SEC, and witness immunity as to defendant Goldstein. We adopt the district court's reasoning regarding the dismissal of Counts 3-7. However, we conclude that Counts 1, 2 and 5 were not barred by collateral estoppel. Rather, we believe that Counts 1 and 2 should be dismissed on grounds of sovereign immunity and Count 5 on grounds of official immunity and failure to state a claim. Accordingly, we affirm.
 
 BACKGROUND
 
 3
 In 1979, the SEC filed an action against Sprecher and others arising from their dealings in the securities of Five Star Coal, Co. Securities and Exchange Commission v. Five Star Coal Co., No. C-2-77-832 (S.D.Ohio filed December 31, 1979). That action was terminated with prejudice by the SEC pursuant to a written stipulation in which Sprecher agreed not to engage in certain securities transactions for specific periods of time and to waive any rights of action he might have against the SEC or its employees arising from the Five Star investigation. Sprecher alleges that he reached an additional oral understanding with an SEC official named Levine that the SEC would not harass him or his clients and would not subpoena him without first demonstrating that the subpoena was not a means of harassment.
 
 
 4
 On April 16, 1980, the SEC entered a formal Order Directing Private Investigation as part of an inquiry into possible violations of the antifraud provisions of the federal securities laws arising from transactions in ATR securities. The SEC subsequently issued subpoenas duces tecum to several individuals involved with ATR, including Sprecher, who was a former president of the company. On December 9, 1980, Sprecher filed a motion to quash the subpoena with the SEC, putting forward essentially the same claims as he presents to this Court. The SEC denied the motion and, on April 16, 1981, Sprecher filed the present suit in the Eastern District of New York.
 
 
 5
 Shortly thereafter, the SEC applied to the United States District Court for the Southern District of New York for an order enforcing the ATR investigatory subpoenas, including the subpoena against Sprecher. Sprecher vigorously opposed enforcement of the subpoena, arguing that the investigation was improperly motivated by religious bias and a desire to harass him, that the subpoena violated the Five Star Coal agreement, and that it sought to compel him to divulge materials protected by the attorney-client privilege. The district court, finding that these arguments were frivolous and interposed solely for delay, granted enforcement of the subpoena. SEC v. Knopfler, No. M-18-304 (S.D.N.Y. April 28, 1981).
 
 
 6
 We affirmed that decision in SEC v. Knopfler, 658 F.2d 25 (2d Cir.1981), cert. denied 455 U.S. 908, 102 S.Ct. 1255, 71 L.Ed.2d 446 (1982). In response to Sprecher's argument that he should have been afforded an evidentiary hearing, we stated that "[SEC] enforcement proceedings may be summary in nature, and it is within the discretion of the district court to determine whether or not an evidentiary hearing is required." 658 F.2d at 26 (citations omitted). We further noted that the burden of proof is a "heavy" one for the party opposing enforcement of a subpoena on the grounds of "invalid purpose" and that "[a]n evidentiary hearing is not required in the absence of a meaningful and substantial factual showing." Id. Concluding that Sprecher's factual showing was inadequate, we affirmed the district court's decision.
 
 
 7
 On May 22, 1981, shortly after the district court's enforcement order was entered but prior to our decision in Knopfler, the SEC moved in the Eastern District to dismiss the present case. The motion lay on the suspense docket until the Supreme Court denied certiorari in Knopfler, 455 U.S. 908, 102 S.Ct. 1255, 71 L.Ed.2d 446 (1982). Then, on July 14, 1982, the district court granted the SEC's motion.DISCUSSION
 
 1. Collateral Estoppel
 
 8
 Counts 1 and 2 of Sprecher's amended complaint state claims of improprieties, ratified by the individual defendants, on the part of the SEC during the ATR investigation. Count 3 of the complaint alleges that the material under subpoena is protected by the attorney-client privilege. Together, the three counts request as relief: (1) a permanent injunction restraining the SEC and the individual defendants from harassing Sprecher; (2) a writ of mandamus against the SEC requiring adherence to the alleged terms of the Five Star Coal agreement, dissolution of the investigative order, and withdrawal of the subpoenas; (3) a declaratory judgment that the investigative order and the subpoenas are void and illegal; and (4) monetary damages of $10 million. Count 5 states a claim of defamation against individual defendant Graber, alleging that he was motivated by religious prejudice against Orthodox Jews, and requests monetary damages in the amount of $50 million.
 
 
 9
 The SEC argues that the issues raised in these counts are identical to the issues raised in Knopfler, and are, therefore, subject to collateral estoppel. Collateral estoppel precludes relitigation of an issue where: (1) the issue in the subsequent suit is identical to the issue actually decided in the prior suit, RX Data Corp. v. Department of Social Services, 684 F.2d 192, 197 (2d Cir.1982); (2) the determination of the issue in the prior suit was necessary and essential to the judgment in that action, id.; and (3) the party against whom collateral estoppel is being invoked had a " 'full and fair' opportunity to litigate [his] claims" in the prior action. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 332-333, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979). In discussing requirement (3), a full and fair prior opportunity to litigate the issue in question, the Parklane Court stated that estoppel may well be unfair to a litigant "where the second action affords the [party against whom estoppel is being invoked] procedural opportunities unavailable in the first action that could readily cause a different result." Id. at 331, 99 S.Ct. at 651.
 
 
 10
 We believe that Knopfler does not have a preclusive effect as to Counts 1, 2 and 5, since Sprecher's opportunity to litigate the pertinent issues in the earlier proceeding was considerably narrower than the opportunity available in a plenary civil action. As we stated in Knopfler, subpoena enforcement proceedings are summary in nature. 658 F.2d at 26. Once the SEC has complied with the statutory prerequisites for enforcement, the opponent has a "heavy burden" of proving that the subpoena is sought for an invalid purpose, and a meaningful and substantial factual showing must be made even to receive an evidentiary hearing. Id. This evidentiary showing must be made, moreover, without the aid of discovery.
 
 
 11
 On the other hand, in a plenary action for abuse of process, allegations alone may suffice to obtain discovery and defeat a motion for judgment on the pleadings. Moreover, the defendants would bear the burden of showing the lack of any dispute as to a material fact in a motion for summary judgment.
 
 
 12
 Sprecher thus bore a "heavy burden" to demonstrate improprieties without the aid of discovery in the enforcement proceeding, while in the instant case, if a valid claim for relief is alleged, the defendants would bear the burden on a motion for summary judgment and only after discovery was had. In view of the substantially disparate opportunities for discovery and differing burdens in the two proceedings, collateral estoppel cannot have a preclusive effect in the present action unless it is shown that these differences would not affect the outcome. Since Sprecher's complaint was dismissed on the pleadings before discovery, no such finding can be made.
 
 
 13
 As to Count 3, the claim that the subpoena violated the attorney-client privilege, we agree with the district court that collateral estoppel applies since Sprecher's opportunity to litigate the merits of the privilege claim in Knopfler was the substantial equivalent of that which would be available in a plenary action. Discovery is unnecessary since the client and Sprecher had the relevant information at their disposal. Moreover, the burden of proving the applicability of the privilege, no matter what the nature of the underlying proceeding, is upon the person claiming it. McCormick's Handbook of the Law of Evidence Sec. 88 (E. Cleary 2d ed. 1972). There thus was a full and fair opportunity to litigate that issue in Knopfler, and relitigation in the instant case is precluded.
 
 2. Claims Against the SEC
 
 14
 Every count of Sprecher's complaint, save 5 and 7, alleges a claim against the SEC, thus raising a threshold issue involving the axiomatic proposition that the United States and federal agencies are immune from suit unless Congress has expressly waived sovereign immunity. Among the statutes upon which Sprecher relies as a waiver are the Tucker Act, 28 U.S.C. Sec. 1346(a) (1976), the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Sec. 1346(b) (1976), the Mandamus Statute, 28 U.S.C. Sec. 1361 (1976), and the Federal Question Statute, 28 U.S.C. Sec. 1331 (1976). Only the latter requires extended discussion.
 
 
 15
 Jurisdiction clearly does not lie under the Tucker Act since claims arising under it must be heard in the Court of Claims when the amount in controversy exceeds $10,000. The FTCA provides no basis for this action since it authorizes suits only against the United States itself, not its individual agencies. 28 U.S.C. Sec. 2680(a); Myers & Myers, Inc. v. United States Postal Services, 527 F.2d 1252, 1256 (2d Cir.1975). Moreover, Sprecher has not met the administrative prerequisites to filing under the FTCA, 28 U.S.C. Sec. 2675(a), prerequisites which are jurisdictional in nature and may not be waived. See House v. Mine Safety Appliances Co., 573 F.2d 609, 617 (9th Cir.), cert. denied, 439 U.S. 862, 99 S.Ct. 182, 58 L.Ed.2d 171 (1978). Nor is there jurisdiction under the Mandamus Statute since Sprecher's allegations utterly fail to establish the elements requisite to such relief. Lovallo v. Froehlke, 468 F.2d 340, 343 (2d Cir.1972), cert. denied, 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973).
 
 
 16
 Prior to 1976, sovereign immunity would clearly have barred an action such as Sprecher's under Section 1331. However, in that year, Congress amended the Administrative Procedures Act ("APA") to provide for a limited waiver of sovereign immunity. That waiver, 5 U.S.C. Sec. 702 (1976) reads in pertinent part:
 
 
 17
 A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.... Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.
 
 
 18
 It is clear that Section 702 does not waive sovereign immunity as to Counts 4, 6 and 7 since they seek monetary damages. This leaves to be considered the claims for equitable relief in Counts 1 and 2.
 
 
 19
 The relationship between Section 702 and actions brought under section 1331 was once the subject of a disagreement between this court and the Third Circuit. In Estate of Watson v. Blumenthal, 586 F.2d 925 (2d Cir.1978), we held, as an alternative ground of decision, that section 702 "did not remove the defense of sovereign immunity in actions under Sec. 1331." Id. at 932. In Jaffee v. United States, 592 F.2d 712 (3d Cir.1979), the Third Circuit reached the contrary conclusion. We have now abandoned this alternative ground of Watson and read section 702 as a waiver of immunity where a proper action is brought under 28 U.S.C. Sec. 1331. BK Instrument, Inc. v. United States, 715 F.2d 713 (2d Cir.1983).
 
 
 20
 Section 702 limits the waiver to a "legal wrong [suffered] because of agency action." We may assume for purposes of this discussion only that the initiation of an investigation and issuance of subpoenas motivated by a general malice or desire to harass constitutes such a "legal wrong." However, a proviso to Section 702 states that the waiver of immunity does not "[affect] other limitations on judicial review." We must, therefore, address the question of whether the review available in a subpoena enforcement proceeding falls within this proviso and sovereign immunity continues to bar an action under Section 1331 challenging an SEC investigation.
 
 
 21
 The legislative history of Section 702 amply demonstrates that Congress did not intend to waive sovereign immunity where a matter is statutorily committed to agency discretion or where "another statute provides a form of relief which is expressly or impliedly exclusive." H.R. No. 94-1656, p. 3, 94th Cong.2d Sess., reprinted in U.S.Code Cong. & Ad.News, 6121, 6123 (1976). See also id. at 6132-33. Congress believed that, prior to the enactment of Section 702, the doctrine of sovereign immunity had led to a confusing and illogical body of law. Id. at 6127-28. It concluded that use of the doctrine by the government had deprived many private parties of justifiable redress by focusing judicial attention upon an outmoded and impenetrable remnant of legal history rather than upon the appropriateness of judicial review and supervision of particular kinds of official conduct. Id. at 6129.
 
 
 22
 Because of the very nature of the problem Section 702 was intended to address, however, its applicability to modern regulatory agencies is limited. The legislation establishing the authority of such agencies usually defines the scope of judicial review over their actions and sovereign immunity will generally continue to bar other kinds of lawsuits against them as a consequence of the proviso to Section 702. The principal effect of Section 702, therefore, is upon the "older executive departments, such as the Departments of State, Defense, Treasury, Justice, Interior and Agriculture." Id. at 6125. However, where "omissions or gaps" exist in legislation relating to the modern agencies, Section 702 may affect them also. Id.
 
 
 23
 Turning to the precise problem raised in the instant case, we believe Counts 1 and 2 of Sprecher's complaint allege actions which are either committed to the SEC's discretion or are subject to a statutory provision which provides the exclusive relief available. We conclude, therefore, that Counts 1 and 2 fall within the proviso to Section 702 preserving existing limitations on judicial review and are barred by sovereign immunity.
 
 
 24
 SEC investigations are authorized "in its discretion" by 15 U.S.C. Sec. 78u(a) (1976). The issuance of subpoenas is similarly authorized by 15 U.S.C. Sec. 78u(b) (1976). The initiation of an investigation and issuance of subpoenas are not unreviewable by the federal courts, however, for such subpoenas are unenforceable absent a court order issued under 15 U.S.C. Sec. 78u(c) (1976). Parties who are the subject of such subpoenas are free in a proceeding under that section to raise claims of abuse of process, as Sprecher did in Knopfler.
 
 
 25
 It is of course true, as the earlier discussion of collateral estoppel indicated, that the procedures and scope of judicial scrutiny under Section 78u(c) differ considerably from those which would be available in an action for abuse of process. That is of little moment, however, for the proviso to Section 702 expressly preserves existing "limitations upon judicial review." Sprecher's argument thus runs counter to the very thrust of Section 702, which was designed to waive sovereign immunity only in situations when specific provisions establishing judicial review do not exist and to leave untouched areas in which such review was barred because the issue was either statutorily committed to agency discretion or in which judicial review was the subject of explicit legislation.
 
 
 26
 We see no reason to conclude other than that Section 78u(c) is the exclusive method by which the validity of SEC investigations and subpoenas may be tested in the federal courts. While the existence of dual and non-exclusive proceedings to challenge such matters is not unthinkable, it is sufficiently anomalous and disruptive of existing practice for us to call for some specificity of purpose to that end on Congress's part. No such purpose is evident. To the contrary, the sole reason for authorizing plenary abuse of process actions in addition to Section 78u(c) proceedings would be a fear that judicial scrutiny in the latter is too circumscribed. That purpose, however, collides head on with the express intention of the Congress in enacting Section 702 to preserve existing "limitations on judicial review." We hold, therefore, that Counts 1 and 2 are barred by the doctrine of sovereign immunity.
 
 3. Claims Against Individual Defendants
 
 27
 We agree with the district court that sovereign immunity extends to agency officials named in their official capacities. Huntington Towers, Ltd. v. Franklin National Bank, 559 F.2d 863 (2d Cir.1977), cert. denied, 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978). While Sprecher contends that the district court erred in failing to recognize the qualified nature of official immunity for common law torts, Butz v. Economou, 438 U.S. 478, 494-95, 98 S.Ct. 2894, 2904-05, 57 L.Ed.2d 895 (1978), it is clear that the individuals involved enjoyed absolute immunity insofar as the acts complained of fell within the scope of judicial or prosecutorial functions. Harlow v. Fitzgerald, --- U.S. ----, 102 S.Ct. 2727, 2732-33, 73 L.Ed.2d 396 (1982).
 
 
 28
 Moreover, we agree with the district court that the individual defendant's actions as alleged were authorized by the federal securities laws and were within the "outer perimeter" of their official duties. They fell, therefore, within the ambit of immunity from common law tort actions such as defamation (Count 5), injury to business relations (Count 4), perjury (Count 6) and subornation of perjury (Count 7). Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); see also Scherer v. Morrow, 401 F.2d 204 (7th Cir.1968), cert. denied, 393 U.S. 1084, 89 S.Ct. 868, 21 L.Ed.2d 777 (1969) (statement by Secret Service agent that plaintiff was a "nut" and had pointed a cannon at President held within "outer perimeter" of agent's line of duty); Holmes v. Eddy, 341 F.2d 477 (4th Cir.1965) (SEC officials not liable for injury to business arising from investigation). We find irrelevant Sprecher's claim that many of the actions occurred prior to the SEC's issuance of the formal investigative order since such an order does not trigger the investigation but merely extends the investigation to the issuance of subpoenas. Cf. United States v. Fields, 592 F.2d 638, 644-45 (2d Cir.1978). Hence, investigative actions taken by agency officials prior to the issuance of the formal order are within the scope of their duties.
 
 
 29
 We agree further with the district court that the perjury claim against defendant Goldstein is barred by witness immunity, which prevents civil suits against individuals for damages arising from statements made about the subject matter of the controversy in a judicial proceeding. See Briscoe v. LaHue, --- U.S. ----, ---- - ----, 103 S.Ct. 1108, 1118-1121, 75 L.Ed.2d 96 (1983); Imbler v. Pachtman, 424 U.S. 409, 439, 96 S.Ct. 984, 999, 47 L.Ed.2d 128 (1976). Sprecher's attempt to avoid the implications of witness immunity by casting the affidavit as an investigative document simply places it under the alternative protection of official immunity, which is a clear defense to the kind of conclusory allegations included in Sprecher's complaint. Tenney v. Brandhove, 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951). Thus, we find that the district court properly dismissed Sprecher's common law tort counts against the individual defendants.
 
 
 30
 Finally, we turn to Sprecher's claims against the individual defendants for alleged constitutional violations. Contrary to Sprecher's contentions, the district court did not err in relying upon official or sovereign immunity in dismissing his allegations of constitutional torts. Rather, the district court found that Sprecher's naked allegations of defamation did not state a constitutional claim since he failed to point to any but the most speculative loss of liberty or property interest. Paul v. Davis, 424 U.S. 693, 706, 711-12, 96 S.Ct. 1155, 1163, 1165-66, 47 L.Ed.2d 405 (1976). Similarly, Sprecher's claims of an invasion of his constitutional right to privacy are based on no more than a general right to be let alone, the protection of which is normally left to state law. Katz v. United States, 389 U.S. 347, 350-51, 88 S.Ct. 507, 510-11, 19 L.Ed.2d 576 (1967). We agree with the district court that Sprecher has implicated no constitutionally cognizable privacy rights such as those relating to family rights, marriage or even the unreasonable disclosure of personal matters.
 
 
 31
 We find Sprecher's claims of violation of his first amendment right to religious freedom are wholly conclusory in nature and, therefore, unable to withstand a motion to dismiss. While Sprecher rightly states that a complaint is intended to inform rather than to present detailed factual allegations, it must present some factual basis for the claims alleged in order to withstand a motion to dismiss. Here, Sprecher asserts simply that defendant Graber defamed him "in order to punish and torment plaintiff because the latter is an Orthodox Jew and as a result of his close relationship with Hassidic Jews." (Count 5). This is simply insufficient to state a claim as a matter of law, Jewell v. City of Covington, 425 F.2d 459, 460 (5th Cir.), cert. denied, 400 U.S. 929, 91 S.Ct. 195, 27 L.Ed.2d 189 (1970), and cannot be remedied by dubious amplification of the factual record in appellate briefs. Thus we affirm the district court's dismissal of Sprecher's constitutional tort claims.
 
 
 32
 Affirmed.