TREATS INTERNATIONAL
ENTERPRISES, INC.,
Plaintiff,

v.

SECURITIES AND EXCHANGE
COMMISSION, Defendant.

No. 93 Civ. 2031 LLS.

United States District Court,
S.D. New York.

Aug. 17, 1993.

Gerald D. Fischer, New York City, for plaintiff.

Richard M. Humes, Associate Gen. Counsel, S.E.C., Washington, DC, for defendant.

## OPINION AND ORDER

STANTON, District Judge.

Because the SEC has voluntarily terminated its examination (and permitted withdrawal) of Treats' most recent post-effective amendment, the only remaining issue is whether the SEC's continuing investigation of Treats should be enjoined.

■ The United States, as sovereign, is immune from suit save as it consents to be sued. *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). Treats brings this action under the Administrative Procedure Act, 5 U.S.C. § 501 *et seq.* ("APA"), of which section 702 waives immunity from suits against administrative agencies by providing that any person "adversely affected or aggrieved by agency action ... is entitled to judicial review thereof."

However, section 701(a) renders the waiver inapplicable where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." The Court of Appeals for the Second Circuit in *Sprecher v. Graber,* 716 F.2d 968, 974–75 (2d Cir.1983), discussed that provision in the context of a similar action seeking to enjoin an SEC investigation:

> The legislative history of Section 702 amply demonstrates that Congress did not intend to waive sovereign immunity where a matter is statutorily committed to agency discretion or where "another statute provides a form of relief which is expressly or impliedly exclusive." H.R. No. 94–1656, p. 3, 94th Cong.2d Sess., *reprinted in* U.S.Code Cong. & Ad.News, 6121, 6123 (1976). *See also id.* at 6132–33.

\* \* \* \* \* \*

We see no reason to conclude other than that Section 78u(c) [action challenging an SEC subpoena] is the exclusive method by which the validity of SEC investigations and subpoenas may be tested in the federal courts. While the existence of dual and non-exclusive proceedings to challenge such matters is not unthinkable, it is sufficiently anomalous and disruptive of existing practice for us to call for some specificity of purpose to that end on Congress's part. No such purpose is evident. To the contrary, the sole reason for authorizing plenary abuse of process actions in addition to Section 78u(c) proceedings would be a fear that judicial scrutiny in the latter is too circumscribed. That purpose, however, collides head on with the express intention of the Congress in enacting Section 702 to preserve existing "limitations on judicial review."

The point was ruled on explicitly and directly in *Sprecher v. Von Stein,* 772 F.2d 16 (2d Cir.1985), a later action by the same appellant:

> This marks appellant's fourth attempt to obtain relief for alleged SEC misconduct in the conduct of an investigation.

> The disposition of this appeal is in large part governed by our decision in *Graber, supra.* Thus, appellant contends that the district court erred in dismissing his complaint and granting summary judgment against him on his request that the court "supervise" the SEC's conduct of its investigation. Summary judgment was proper on this claim, since the district court was without jurisdiction to award such relief. A district court has no jurisdiction to award non-monetary relief against an agency on a claim that it is conducting an improper investigation where another statute provides an exclusive avenue of redress, or where the action complained of is committed to agency discretion. *Graber,* 716 F.2d at 974. The exclusive method for testing the validity of the SEC's investigatory motives or methods is a contested subpoena enforcement proceeding under

15 U.S.C. § 78u(c), *Graber,* 716 F.2d at 975, which appellant waived by voluntarily answering the only subpoena ever addressed to him in the inquiry.

772 F.2d at 18 (citations omitted).

■ The same result follows if one employs the analysis set forth in *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), where the Supreme Court addressed the apparent "tension between a literal reading of § a(2) which exempts from judicial review those actions committed to agency 'discretion,' and the primary scope of review prescribed by § 706(2)(A)—whether the agency's action was 'arbitrary, capricious, or an *abuse of discretion.*'" 470 U.S. at 829, 105 S.Ct. at 1654 (emphasis in original). The Court determined that the § 701(a)(2) exception applies "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." 470 U.S. at 830, 105 S.Ct. at 1655. Thus, the APA precludes judicial review of those discretionary agency actions for which "no judicially manageable standards are available for judging how and when an agency should exercise its discretion." *Ibid.*

Under that analysis, the issue is whether the legislative materials respecting the agency supply judicially manageable standards for judging how and when the SEC should exercise its discretion to investigate possible securities violations.

In determining whether a "meaningful standard" exists for review of agency action, courts have considered the statutory language and structure, the statutory history, the nature of the agency action, and the regulations promulgated under the statute. *See, Dina v. Attorney General of the United States,* 793 F.2d 473 (2d Cir.1986); *Singh v. Moyer,* 867 F.2d 1035 (7th Cir.1989); *Chong v. Director, U.S. Information Agency,* 821 F.2d 171 (3d Cir.1987).

■ In this case, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(a), provides that the SEC "may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated, is violating or is about to violate any provisions" of the act or rules regulating securities exchanges.

The statute itself suggests no standards by which the SEC's discretion to investigate Treats might be reviewed. Indeed, the legislative history shows that "Congress endowed the Commission with 'broad powers' to conduct investigations in support of its statutory mandate to protect the public interest through prompt and effective enforcement of the federal securities laws." H.Rep. No. 1321, 96th Cong., 2d Sess. 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3874, 3878. The only apparent guidance for assessing the limits of the SEC investigatory authority is found in the SEC's own regulations (17 C.F.R. § 200.-66):

The power to investigate carries with it the power to defame and destroy. In determining to exercise their investigatory power, members should concern themselves only with the facts known to them and the reasonable inferences from those facts. A member should never suggest, vote for, or participate in an investigation aimed at a particular individual for reasons of animus, prejudice or vindictiveness. The requirements of the particular case alone should induce the exercise of the investigatory power, and no public pronouncement of the pendency of such an investigation should be made in the absence of reasonable evidence that the law has been violated and that the public welfare demand [*sic.*] it.

17 C.F.R. § 200.66.

That general and exhortatory language does little to limit the discretion of the SEC in determining to investigate a particular case; it requires that its discretion be exercised on the facts and in good faith. Such a "standard" is not judicially manageable: to apply it would require a plenary review of not only the particular facts but such intangibles as the commissioners' experience, the allocation of agency resources, the status of related investigations, and the like, in clear contravention of Congress' decision to confide the investigative determination to the SEC. *Compare, Center for Auto Safety v.*

*Dole,* 846 F.2d 1532, 1535 (D.C.Cir.1988) (the regulation "does not limit the agency's discretion in a way that enables us to conduct a meaningful review of the agency's compliance") *with CC Distributors, Inc. v. United States,* 883 F.2d 146, 155 (D.C.Cir.1989) (regulation enumerating particular activities in each category provides sufficient guidance for court to determine whether a particular activity is placed in proper category). For a district court to "conduct some kind of hearing to determine the scope and thrust of the ongoing investigation" would "drain the resources of the judiciary as well as the Commission" and enable targets of investigations to hamper the SEC's efforts to enforce the securities laws. *SEC v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 750, 104 S.Ct. 2720, 2729 and nn. 23 & 24, 81 L.Ed.2d 615 (1984).

Giving Treats every benefit of the argument, one must still conclude that the statute governing SEC investigations and its accompanying regulations "constrain agency action only minimally," and the scope of review for abuse of agency discretion is correspondingly limited. *See, Dina v. Attorney General of the United States,* 793 F.2d 473, 477 (2d Cir.1986) (Oakes, J., concurring). Accordingly, a court can expect no more than a showing of some good faith basis for investigating Treats, based on particular circumstances relating to Treats' activities. Here, the SEC has made at least that minimal showing.

Treats' complaint seeking to enjoin the SEC's investigation is beyond the limited scope of review available in this court. Treats' motion for a preliminary injunction is accordingly denied, and the SEC's motion to dismiss the complaint is granted.

So ordered.