**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2252
_____

GUY GENTILE,

                                        Appellant
v.

SECURITIES & EXCHANGE COMMISSION
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-19-cv-05155)
District Judge: Honorable Jose L. Linares

_____

Argued: January 15, 2020

Before:  HARDIMAN, PORTER, and PHIPPS,
*Circuit Judges*.

(Filed: September 10, 2020)

Adam C. Ford         [Argued]
Ford O'Brien
575 5th Avenue, 17th Floor
New York, NY 10017

*Counsel for Appellant*

Matthew S. Ferguson        [Argued]
Samuel M. Forstein
United States Securities & Exchange Commission
100 F. Street, N.E.
Washington, DC 20549
                *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

PHIPPS, *Circuit Judge*.

Congress often confers significant investigative powers upon administrative agencies, such as the Securities and Exchange Commission. Those powers commonly include the ability to seek testimony and documents through administrative subpoena. In this case, Guy Gentile asserts that the SEC abused its investigative authority through several unauthorized administrative subpoenas, to the detriment of his businesses. He sues under the Administrative Procedure Act (APA) to hold unlawful and set aside the SEC's investigation under which the subpoenas were issued. But his suit cannot proceed because sovereign immunity shields federal agencies from suit. And although the APA broadly waives sovereign immunity, that waiver does not extend to challenges to an agency's decision to investigate. For that reason, on *de novo* review, we will affirm the order dismissing Gentile's complaint for lack of subject matter jurisdiction.

I.

Guy Gentile and the Securities and Exchange Commission are not strangers. Their acquaintance dates back to 2012 when the SEC investigated Gentile for his role in a penny-stock manipulation scheme in 2007-08. Later, the SEC civilly sued Gentile, and he was indicted for securities fraud violations. Gentile challenged both suits, leading to their dismissals on timeliness grounds, but this Court reinstated the SEC's civil suit. *See SEC v. Gentile*, 939 F.3d 549, 552-53, 566 (3d Cir. 2019).

This case involves a separate SEC investigation, one related to securities transactions through an unregistered broker-dealer in violation of Section 15 of the Securities and Exchange Act of 1934. *See* 15 U.S.C. § 78o(a). The subject of that investigation – Traders Café LLC, a day-trading firm – maintained an account with Gentile's Bahamian broker-dealer, which was not registered in the United States. The SEC issued a Formal Order of Investigation into Traders Café on November 25, 2013. But later, without issuing a new Formal Order of Investigation, the SEC informed Gentile that he was a target in that investigation.

As part of its investigation, the SEC has twice subpoenaed Gentile for testimony – once in March 2016 and again in December 2017. He refused to comply with those subpoenas, and despite having the ability under the Exchange Act to initiate an action to enforce those subpoenas, *see* 15 U.S.C. § 78u(c), the SEC has not done so.

Instead, the SEC has pursued other options for obtaining information, and it has not been shy about serving subpoenas

3

on other entities associated with Gentile. Two subpoena recipients – Gentile's personal attorney and an entity affiliated with Gentile's Bahamian broker-dealer – refused to comply with the SEC's subpoenas. The SEC commenced enforcement actions against those entities in the Southern District of Florida in February 2019.[1]

Gentile saw those actions as an opportunity to challenge the legitimacy of the SEC's then six-year investigation, which he alleges was ruining his businesses,[2] and he moved to intervene in those cases. The District Court in Florida denied Gentile's motions, reasoning that Gentile lacked a sufficient interest in the subpoenas to merit intervention.[3] The Court

---

[1] *See SEC v. Marin*, No. 1:19-mc-20493-UU, Application for Order, (S.D. Fla. Feb. 6, 2019) (seeking to compel non-privileged testimony and documents from Gentile's personal attorney); *SEC v. MinTrade Techs., LLC*, No. 1:19-mc-20496-KMW, Application for Order, (S.D. Fla. Feb. 6, 2019) (seeking to compel documents from an affiliate of Gentile's Bahamian broker-dealer).

[2] *See, e.g.*, Compl. ¶ 10 (App. 26) ("Several banks and vendors have stopped doing business with Mr. Gentile as a result of receiving these subpoenas."), ¶ 57 (App. 36) ("As a result of receiving the SEC subpoenas, [two] banks decided to close all bank accounts related to Mr. Gentile."), ¶ 85 (App. 42) ("Similarly, Citibank and Key Bank dropped Mr. Gentile as a client as a result of the subpoenas that the SEC sent to them during or prior to September 2017.").

[3] *See Marin*, No. 19-20493 at ECF No. 55, pg. 9 (May 31, 2019) ("[T]he undersigned finds that Gentile has not shown that he has a legally protected interest in this matter.");

4

explained that Gentile would have other, more concrete opportunities to challenge the legitimacy of the SEC's investigation, such as if the SEC brought an action to enforce the subpoenas served on him or if the SEC initiated a civil suit against him.[4] Gentile did not appeal those rulings, and the District Court in Florida ordered compliance with each subpoena.[5]

Gentile challenged the legitimacy of the SEC's investigation on another front as well. On February 8, 2019, two days after the SEC commenced the subpoena enforcement actions in Florida, Gentile filed this lawsuit in the District of New Jersey. *See* Compl. (App. 23-46). His complaint sought a declaration that the Traders Café investigation was unlawful. *See id.* at 24 (App. 46). It also requested the quashing of the SEC's investigative subpoenas served in connection with the Traders Café investigation and an injunction to prevent the SEC from using the fruits of that investigation against him. *See id.*

In response, the SEC moved to dismiss that action for lack of subject matter jurisdiction. It argued that the doctrine

---

*MinTrade*, No. 19-20496 at ECF No. 27, pg. 5 (May 28, 2019) ("First, we find that Gentile has failed to show that he possesses a legally protectable interest in these proceedings.").

[4] *See Marin*, No. 19-20493, at ECF No. 64 (Sept. 30, 2019); *MinTrade*, No. 19-20496 at ECF No. 34 (July 17, 2019); *see also* App. 1027; App. 1227.

[5] *See Marin*, Order, No. 19-20493, at ECF No. 63 (Sept. 30, 2019); *MinTrade*, Order, No. 19-20496, at ECF No. 39 (Nov. 13, 2019).

of sovereign immunity barred Gentile's suit for three reasons: (i) Gentile was not challenging a final agency action, *see* 5 U.S.C. § 704; (ii) the APA did not allow judicial review because the Exchange Act provided the exclusive mechanism for challenging an SEC-issued investigative subpoena, *see* 15 U.S.C. § 78u(c); and (iii) the SEC's investigation was a matter committed to agency discretion by law, *see* 5 U.S.C. § 701(a)(2).

The District Court granted the SEC's motion to dismiss and denied a preliminary injunction motion that Gentile had also filed. In doing so, the District Court rejected the SEC's finality argument. But the Court dismissed Gentile's suit on sovereign immunity grounds by following a chain of reasoning from the Second Circuit in *Sprecher v. Graber*, 716 F.2d 968 (2d Cir. 1983). The *Sprecher* sequence begins by accounting for a proviso in the APA's waiver of sovereign immunity, *see* 5 U.S.C. § 702, which makes explicit that the APA's waiver does not affect other limitations on judicial review. The next step in the analysis determines that an SEC-initiated enforcement action under the Exchange Act, *see* 15 U.S.C. § 78u(c), provides the exclusive mechanism for disputing SEC-issued investigative subpoenas. Under the *Sprecher* reasoning, by providing the exclusive method for challenging a subpoena, the Exchange Act limits judicial review. Thus, due to the proviso, the APA's waiver of sovereign immunity could not expand the Exchange Act's limitation on judicial review – leaving Gentile's complaint barred by sovereign immunity. With that conclusion, the District Court did not address the SEC's final argument, that sovereign immunity insulated its actions from judicial review because they were committed to agency discretion by law.

6

The District Court's order dismissing for lack of jurisdiction was final for purposes of appeal. Gentile timely appealed that order, bringing this case within the appellate jurisdiction of this Court. *See* 28 U.S.C. § 1291; *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 174 n.2 (3d Cir. 2000). He now argues that the District Court erred by following the *Sprecher* analysis. The SEC counters first by defending the *Sprecher* reasoning and second by contending that its decision to investigate is unreviewable as a matter committed to agency discretion by law. On that second point, the SEC prevails.

II.

A.    THE APA'S WAIVER OF SOVEREIGN IMMUNITY IS BROAD, BUT IT IS SUBJECT TO CONDITIONS AND EXCEPTIONS.

Because the SEC's subpoenas have harmed his businesses, Gentile sues the SEC to challenge the legitimacy of its investigation. But the United States and its agencies are generally immune from suit under the doctrine of sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). And absent congressional authorization – through an unequivocal statutory waiver – it is "unquestioned" that the federal government retains sovereign immunity. *Alden v. Maine*, 527 U.S. 706, 749 (1999); *see also FAA v. Cooper*, 566 U.S. 284, 290 (2012) ("We have said on many occasions that a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text."). A statutory waiver of sovereign immunity thus defines the scope of a "court's jurisdiction to

7

entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *see also Meyer*, 510 U.S. at 475.

In light of that jurisdictional limitation, Gentile attempts to bring claims for declaratory and injunctive relief under the APA's waiver of sovereign immunity, codified at 5 U.S.C. § 702. As originally enacted, § 702 did not contain an unequivocal waiver of sovereign immunity.[6] Instead, it imposed a 'statutory standing' requirement on judicial review, which, as amended, provides that:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

5 U.S.C. § 702.

Statutory standing under § 702 depends on agency action. To have such standing, a person must suffer a legal wrong because of agency action or, under the zone-of-interests test, a person must be "adversely affected or aggrieved by agency action within the meaning of a relevant statute."

---

[6] *See* Administrative Procedure Act, Pub. L. No. 79-404, § 10(a), 60 Stat. 237, 243 (June 11, 1946); *see also* Pub. L. No. 89-554, 80 Stat. 378, 392 (Sept. 6, 1966) (codifying the provision at 5 U.S.C. § 702).

5 U.S.C. § 702; *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970).[7]

The 1976 amendments to the APA supplemented § 702. The added text explicitly waived sovereign immunity to sue the United States for "relief other than money damages":

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

Pub. L. No. 94-574, 90 Stat. 2721, 2721 (Oct. 21, 1976); *see also* 5 U.S.C. § 702.

To ensure that that broad waiver of sovereign immunity did not overtake pre-existing limitations on judicial review, the 1976 amendments conditioned the waiver through two provisos:

> Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other

---

[7] *See also Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 395-96 (1987); *Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 163-64 (3d Cir. 2015).

9

statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

Pub. L. No. 94-574, 90 Stat. 2721, 2721 (Oct. 21, 1976); *see also* 5 U.S.C. § 702.

Putting the pieces together, to proceed under the APA's waiver of sovereign immunity a person must (i) possess statutory standing; (ii) seek relief other than money damages; and (iii) not be excluded by the waiver's two provisos.

As a further limitation, two exceptions apply to the APA's waiver of sovereign immunity. *See Heckler v. Chaney*, 470 U.S. 821, 828 (1985) ("[B]efore any review at all may be had, a party must first clear the hurdle of [5 U.S.C.] § 701(a)."). Under the first exception, the APA's waiver of sovereign immunity does not apply when "statutes preclude judicial review," either for an entire subject matter[8] or for a specific class of persons.[9] 5 U.S.C. § 701(a)(1). The second exception

---

[8] *See Dunlop v. Backowski*, 421 U.S. 560, 567-68 (1975) (requiring evidence that Congress meant to preclude "all judicial review" of a decision of the Secretary of Labor); *see also Traynor v. Turnage*, 485 U.S. 535, 543-45 (1988) (reversing a determination that a statute, 38 U.S.C. § 211(a), precluded review of a claim to extend the period for obtaining veterans education benefits); *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 779-80 (1985) (declining preclusion because the statute did not bar judicial review of all aspects of civil service claims for disability).

[9] *See, e.g., Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345-48 (1984) (interpreting the Agricultural Marketing Adjustment

prevents judicial review of "agency action [that] is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).

B.    THE ONLY DISCRETE AGENCY ACTION CHALLENGED IN GENTILE'S COMPLAINT IS THE SEC'S FORMAL ORDER OF INVESTIGATION OF TRADERS CAFÉ.

Gentile seeks very broad relief.  His complaint prays that the SEC's investigation be deemed an unauthorized abuse of process, that all subpoenas be quashed, and that the SEC be barred from using any evidence obtained from the subpoenas "for any purpose in any future proceeding."  Compl. at 24 (App. 46).  Each of those requests for relief other than money damages depends on the legal question of whether the SEC has legal authority to investigate him.  Without such authority, the SEC could not permissibly investigate Gentile, issue subpoenas, or initiate further proceedings.

But the APA's statutory standing requirement excludes from judicial review legal questions untethered to agency action. 5 U.S.C. § 702. Rather, the APA's waiver of sovereign immunity extends only to challenges to agency action.  *See id.* To that end, the APA enumerates several specific categories of agency action.  *See* 5 U.S.C. § 551(13) (defining "agency action" so that it "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act").  Those categories are exemplary, not

Act to preclude consumers from challenging milk marketing orders).

11

exhaustive,[10] and the APA also enables a person to challenge "some particular 'agency action.'" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). Thus, the APA allows challenges to discrete agency action, but not broad challenges to the administration of an entire program. Such programmatic challenges "cannot be laid before the courts for wholesale correction under the APA." *Id.* at 893.

Under those standards, Gentile's complaint challenges only one discrete agency action: the SEC's Formal Order of Investigation of Traders Café. Gentile argues that the Formal Order of Investigation exceeds the SEC's authority because it does not have a sufficient nexus to his conduct and because it allows a retributive investigation.[11] By attacking the Formal

---

[10] *See, e.g., U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1811, 1813 (2016) (permitting judicial review under the APA of a "jurisdictional determination" by Army Corps of Engineers); *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (permitting judicial review under the APA of a "biological opinion" issued by the Fish and Wildlife Service). *But see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62-63 (2004) (holding that a "failure to act" means only "a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)").

[11] *See* Compl. ¶ 101 (App. 45) (describing the controversy as concerning "(a) the authority of the [SEC] to investigate individuals under a [Formal Order of Investigation] which has no nexus to them, and (b) the authority of the [SEC] to investigate an individual for more than five years after a [Formal Order of Investigation] has issued for purposes that are plainly punitive and retributive . . . .").

Order of Investigation, Gentile seeks to invalidate the entire Traders Café investigation including the administrative subpoenas served in connection with the investigation.

Those administrative subpoenas also constitute a discrete agency action. But Gentile's complaint does not seek to quash those subpoenas based on any attribute of any individual subpoena. Rather, Gentile aspires to undermine the SEC's authority for this investigation – with the consequence of nullifying all subpoenas in the matter. Without challenging any individual subpoena or disputing any other discrete agency action, the only agency action challenged by Gentile's complaint is the SEC's Formal Order of Investigation.

C.    THE FIRST PROVISO IN THE APA'S WAIVER OF SOVEREIGN IMMUNITY DOES NOT BAR GENTILE'S CHALLENGE TO THE FORMAL ORDER OF INVESTIGATION.

To defend itself, the SEC leads with the *Sprecher* argument. The SEC starts with the Second Circuit's conclusion that subpoena enforcement actions under the Exchange Act, "are the exclusive method by which the validity of SEC investigations and subpoenas may be tested in federal courts." *Sprecher*, 716 F.2d at 975. From that premise, the SEC argues that by providing the exclusive dispute mechanism, the Exchange Act imposes a limitation on judicial review. Thus, according to the SEC, Gentile's action falls outside the APA's waiver of sovereign immunity due to the first proviso, which ensures that the APA's waiver does not

override "other limitations on judicial review."  5 U.S.C. § 702.

But that argument supposes that Gentile's complaint challenges individual SEC subpoenas.  And while Gentile does seek to quash every subpoena, he does so not due to any particularized defect in any subpoena.  Rather, he does so by challenging the legality of the Formal Order of Investigation. And by directing his challenge to the SEC's Formal Order of Investigation, Gentile avoids the SEC's *Sprecher* argument, which involved a challenge to individual subpoenas – not solely a direct challenge to the agency's decision to open an investigation.  Thus, regardless of whether § 78u(c) of the Exchange Act provides the exclusive mechanism for challenging a subpoena, it does not bar Gentile's challenge to a Formal Order of Investigation.

D.    THE SEC'S DECISION TO OPEN A FORMAL INVESTIGATION IS NOT SUBJECT TO JUDICIAL REVIEW.

The SEC next argues that due to the exception for "agency action committed to agency discretion by law," 5 U.S.C. § 701(a)(2), sovereign immunity prevents judicial review of its Formal Order of Investigation.  That is correct: an agency decision to exercise its investigative power overcomes the "basic presumption" in favor of judicial review of agency action. *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967).

The § 701(a)(2) exception applies only in "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (internal quotation marks and

14

citations omitted); *see also Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018). Those situations often involve "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise." *Chaney*, 470 U.S. at 831. And precedent has identified several classes of agency decisions governed by a "tradition of nonreviewability." *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987). Those include decisions to refrain from enforcement or investigative activity,[12] decisions

---

[12] *Chaney*, 470 U.S. at 838 ("[A]gency refusals to institute investigative or enforcement proceedings [are committed to agency discretion], unless Congress has indicated otherwise."); *S. Ry. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 461-64 (1979); *Am. Disabled for Attendant Programs Today v. U.S. Dep't of Housing & Urban Dev.*, 170 F.3d 381, 384 (3d Cir. 1999) (opining, in a failure to investigate case, that *Chaney* "established a presumption *against* judicial review of agency decisions that involve whether to undertake investigative or enforcement actions" (emphasis in original)); *see also Webster v. Doe*, 486 U.S. 592, 608 (1988) (Scalia, J., dissenting) ("A United States Attorney's decision to prosecute, for example, will not be reviewed on the claim that it was prompted by personal animosity."); *United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case . . . ."); *see generally Sec. & Exchange Comm'n v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 127 n.12 (3d Cir. 1981) (collecting cases); *Leighton v. Sec. & Exchange Comm'n*, 221 F.2d 91, 91-92 (D.C. Cir. 1955) (*per curiam*) ("The discretionary character of the [SEC]'s action [to refuse to investigate] likewise removes it from Section 10 of the [APA],

implicating intelligence and national security concerns,[13] and the spending of lump-sum appropriations.[14]

As with those scenarios, a decision to investigate involves a complicated balancing of several factors peculiarly within the agency's expertise, including the allocation of scarce resources. Most acutely bearing on this case are the Supreme Court's holdings that agency decisions not to investigate, *Seaboard Allied Milling*, 442 U.S. at 461-64, and not to prosecute, *Chaney*, 470 U.S. at 838, are committed to agency discretion by law.

Yet the same set of considerations governs both decisions to investigate and decisions not to investigate. And without judicially manageable standards to evaluate those considerations, an agency decision to investigate is similarly committed to agency discretion by law. Nor has Congress by statute or the SEC by regulation articulated specific standards governing a decision to initiate an investigation under the Exchange Act.[15] Thus, without judicially manageable

---

which excepts from its provisions for judicial review agency action committed by law to agency discretion.").

[13] *Webster*, 486 U.S. at 600-01.

[14] *Lincoln*, 508 U.S. at 192-93; *see also State of N.J. v. United States*, 91 F.3d 463, 471 (3d Cir. 1996).

[15] *See* 15 U.S.C. § 78u(a) ("The Commission may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provisions of [the SEC]."); 17 C.F.R. § 200.66 (stating only that "[t]he requirements of the particular

standards, an agency's decision on whether to investigate is a matter committed to agency discretion by law.

Gentile attempts to avoid this outcome by limiting his challenges to two components of the SEC's investigation: its nexus to him and its allegedly retributive motive. *See* Compl. ¶ 101 (App. 45). But the exception in § 701(a)(2) pertains to "*agency action* [that] is committed to agency discretion by law," and thus it shields the entirety of an agency action that is committed to agency discretion by law. 5 U.S.C. § 701(a)(2) (emphasis added). A litigant cannot, therefore, avoid the exception by challenging only the most problematic component of an agency action that is committed to agency discretion by law. And here, because an agency decision to investigate fits within the § 701(a)(2) exception, targeted piecemeal challenges to that action fall outside of the APA's waiver of sovereign immunity.

In sum, while even the SEC recognizes that its "power to investigate carries with it the power to defame and destroy," 17 C.F.R. § 200.66, the doctrine of sovereign immunity bars Gentile's direct challenge under the APA to the SEC's decision to open an investigation.

\* \* \*

For these reasons, Gentile's complaint had to be dismissed for lack of subject matter jurisdiction, and we will affirm the judgment of the District Court.

---

case alone should induce the exercise of the [SEC's] investigatory power").