CURTIN, District Judge:
Plaintiffs, ninety-six permanently appointed Special Agents of the Federal Bureau of Investigation (“FBI”), appeal from a judgment entered in the United States District Court for the Southern District of New York (McKenna, /.) dismissing, pursuant to Fed.R.Civ.P. 12(b)(1), plaintiffs’ claim that defendants violated the Uniformed Services Employment and Reemployment Rights Act (“USERRA”), 38 U.S.C. § 4301 et seq. The court granted the motion after finding that plaintiffs’ claim was subject to administrative review under the USERRA, and as such, plaintiffs should have filed an internal grievance with the FBI before filing their federal court action. Because plaintiffs failed to do so, the court found that plaintiffs had not exhausted them administrative remedies, and therefore the court lacked subject matter jurisdiction to hear the action.
As set forth below, we affirm the judgment, but on different grounds than those articulated by the court below.
*369 BACKGROUND

The Parties

Plaintiffs are Special Agents of the Federal Bureau of Investigation (“FBI”) who are current, prospective, or future members of the military Reserves of the Armed Forces of the United States (“Armed Forces”). Plaintiffs claim that defendants, the United States of America, the FBI and its Director Louis Freeh, the Department of Justice, Janet Reno as Attorney General of the United States, Michael Bromwich as the Inspector General of the Department of Justice, the Department of Defense, and William Cohen as Secretary of Defense, drafted or approved the 1996 FBI military service policy, which unlawfully prohibits Special Agents of the FBI from serving in the Ready Reserve.

The Reserves

The Reserves of the Armed Forces consist of the Army National Guard, the Army Reserve, the Naval Reserve, the Marine Corps Reserve, the Air National Guard, the Aii Force Reserve, and the Coast Guard Reserve. There are three organizational categories within Reserve Units: the Ready Reserve, the Standby Reserve, and the Retired Reserve. See 10 U.S.C. § 10141(a). The category corresponds to the priority under which members will be called into active duty in time of war or national emergency. See 10 U.S.C. § 2301. The categories also differ as to the extent of yearly training required, available pay, and benefits. For this ease, we need only consider the distinction between Ready Reservists and Standby Reservists.
Ready Reservists are required to participate in at least forty-eight scheduled training periods per year (called “Inactive Duty for Training” or “drills”). Ready Reservists must also serve on Active Duty Training (“ADT”) for at least fourteen days per year. When mobilized, Ready Reservists may be required to report for active duty on very short notice. 32 C.F.R. § 76.6(e)(1). Members of the Ready Reserve are paid for their work and also receive points toward military retirement benefits.
Standby Reservists are volunteers who cannot be involuntarily called into active service in time of war or national emergency unless it is first established that there are not enough Ready Reservists available. See 10 U.S.C. §§ 12301,12306. A member of the Standby Reserve serves on either the Active Status List or Inactive Status List. See 10 U.S.C. §§ 10152, 10153. Members of the Standby Reserve on Active Status may be called into active duty in time of war or national emergency, if needed, but are not obligated to participate in any yearly training sessions. See 10 U.S.C. § 12301(a). Standby Reservists who volunteer to participate in training sessions are not paid, but do earn credit toward military retirement.
Standby Reservists on the Inactive Status List are subject to the limited call-up obligations applicable to all reservists, and thus may not be called into active service in time of war or national emergency unless it is first determined that there are not enough Standby Reservists on Active Status. Standby Reservists on Inactive Status are not authorized to train, nor are they eligible for remuneration or military retirement.

Screening The Reserves

The mobilization of the Ready Reserve to active military service results in a concomitant loss of personnel from civilian employment. As such, Congress mandates that the Ready Reserve be continuously screened to ensure that, among other things, there are not a large number of members with “critical civilian skills,” and that there are no members “whose mobilization in an emergency would result in an extreme ... community hardship.” 10 U.S.C. § 10149(a). Pursuant to 10 U.S.C. § 10149(b), ' those Reservists screened from the Ready Reserve are either (1) transferred to the Standby Reserve; (2) discharged; or (3) transferred, if eligible, *370 to the Retired Reserve. 10 U.S.C. § 10149(b).
Congress delegated the authority of screening the Reserve to the President who, in turn, delegated that authority to the Secretary of Defense pursuant to Executive Order, 11190. See 10 U.S.C. § 10149(a). The Secretary of Defense issued regulations that require the designation and screening of “key” federal positions. See 32 C.F.R. § 44.5(b)(2). Specifically, the regulations noted that “[s]ome Federal employees occupy positions that cannot be vacated during a national emergency or mobilization without seriously impairing the capability of their agency to function effectively.” 32 C.F.R. § 44.5(b)(2)(i). The regulations authorize each “Federal agency head” to determine the positions within the agency that constitute “key positions,” and ensure that those positions are not filled by members of the Ready Reserve. See id.

The FBI’s Policy on Military Service

For at least forty years, the Director of the FBI has prohibited Special Agents from serving in the Ready Reserve by designating the Agents “key federal employees.” [1] The Attorney General of the United States ratified this designation in 1980, observing that it was “absolutely necessary that the FBI be fully prepared during a national emergency to immediately assume its foreign counterintelligence, sabotage and neutrality responsibilities.” Declaration of James Oppy ¶ 5. However, Special Agents were allowed to serve in the Standby Reserve, but were prohibited from participating in ADT.
In 1994, Congress enacted USERRA, which prohibits employment discrimination on the basis of military service. See 38 U.S.C. § 4301, eb seq. USERRA provides that:- “[a] person who is a member of ... a uniformed service shall not be denied ... retention in employment ... on the basis of that membership, application for membership, performance of service, application for service, or obligation.” 38 U.S.C. § 4311(a). USERRA further provides that “[a]n employer may not discriminate in employment against or take any adverse employment action against any person because such person ... has exercised a right provided for in this chapter.” 38 U.S.C. § 4311(b) (Supp.1999).
In light of Congress’ enactment of US-ERRA, the FBI, in 1996, issued a new policy on military service. Under the new policy, Special Agents are still prohibited from serving in the Ready Reserve, but may volunteer to serve on either the Active Duty List or Inactive Duty List of the Standby Reserve. An Agent who wishes to volunteer for ADT must request and receive authorization from his or her supervisor or division head. Decl. of James Oppy ¶ 6. The supervisor or division head retains the right to deny the petition if granting the request would unreasonably and adversely affect FBI operations. Agents approved for ADT are entitled to take up to 15 days of military leave per year and will continue to receive federal pay during such leave. See Department of Defense Directive 1215.6; see also Memorandum from FBI Director Louis Freeh (Aug. 29, 1996). A denial of a request for military service may be appealed to the Deputy Director of the FBI.
On August 27, 1999, plaintiffs filed the present suit in the Southern District of New York. Plaintiffs’ complaint alleged that the FBI policy violated USERRA, the Second Amendment to the United States Constitution, and the Leave with Pay Law, 5 U.S.C. § 6323. Defendants moved to dismiss the action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.
Judge McKenna granted defendants’ motion to dismiss. See Dew v. United States, No. 97-6409, 1998 WL 159060, at *3 (S.D.N.Y. April 1, 1998). In doing so, *371 Judge McKenna determined that unlike “employees of ‘States’ or ‘private employers,’ who may file claims in federal district court, USERRA requires that an aggrieved FBI employee proceed along administrative channels by submitting a grievance under the Act to the inspector general of the agency.” Id. at *3. Because plaintiffs failed to appeal a denial of leave for military service to the Inspector General or Deputy Director of the FBI (the officials designated to hear such appeals), Judge McKenna determined that plaintiffs never exhausted their administrative remedies. See id. at *4. Judge McKenna also determined that plaintiffs’ claims under the Leave with Pay Law and Second Amendment failed to state a claim. See id. at *5-*6. On appeal, plaintiffs only challenge the district court’s finding as it pertains to USERRA.
DISCUSSION

Standard of Review

We review a decision of the district court to dismiss a complaint under Fed.R.Civ.P. 12(b)(1) de novo. Anderson v. State University of New York, 169 F.3d 117, 119 (2d Cir.1999). Under these rules, the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff. Jaghory v. New York State Dep’t. of Educ., 131 F.3d 326, 329 (2d Cir.1997).
In the present case, the district court found that plaintiffs failed to exhaust their administrative remedies, thus making the assumption that under USERRA the FBI’s policy on military service was subject to judicial review. For the reasons set forth below, we believe the district court’s assumption or interpretation of US-ERRA was flawed.

Sovereign Immunity

Although the district court dismissed plaintiffs’ USERRA claims because they had not exhausted available administrative remedies, defendants maintain, as an initial matter, that plaintiffs cannot sue them because the United States has not waived sovereign immunity for USERRA claims by FBI employees. Plaintiffs suggest that Congress waived sovereign immunity for claims such as theirs in section 702 of the Administrative Procedure Act (“APA”).
“Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.” Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). The APA waives sovereign immunity for actions “seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.... ” 5 U.S.C. § 702. The APA does not waive sovereign immunity “where a matter is statutorily committed to agency discretion or where another statute provides a form of relief which is expressly or impliedly exclusive.” Sprecher v. Graber, 716 F.2d 968, 974 (2d Cir.1983) (internal quotation marks omitted); see also 5 U.S.C. § 701 (APA does not apply where “statutes preclude judicial review” or “agency action is committed to agency discretion by law”).
Here, plaintiffs do seek damages, and the APA clearly does not waive sovereign immunity for those claims. See 5 U.S.C. § 702. With respect to plaintiffs’ claims for declaratory and injunctive relief, defendants argue both that USERRA precludes judicial review of these claims and that the FBI’s decisions were committed to its discretion. We agree with defendants that USERRA precludes judicial review of plaintiffs’, claims; and thus, we affirm the district court’s dismissal.

USERRA

“Whether and to what extent a particular statute [provides or] precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the *372 administrative action involved.” Block v. Community Nutrition Inst., 467 U.S. 340, 345, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984).
1. Statutory Scheme
“In particular, at least when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded.” Block, 467 U.S. at 349, 104 S.Ct. 2450. Although there is a “presumption” in favor of judicial review of agency action, this presumption may be overcome when a congressional intent to preclude judicial review is “fairly discernible” in the statutory scheme. Carlyle Towers Condominium Ass’n v. FDIC, 170 F.3d 301, 306 (2d Cir.1999) (quoting Block, 467 U.S. at 351, 104 S.Ct. 2450).
A review of USERRA’s structure reveals that it was clearly Congress’ intent to preclude judicial review of USERRA claims by the employees of the intelligence community. A comparison of sections 4323 and 4324 to section 4325 reveals that Congress deliberately chose not to allow the employees of federal intelligence agencies to sue their employers in federal district court for violations of USERRA. Section 4323(b) of the Act specifically addresses federal jurisdiction over USERRA actions- by state or private employees. Specifically, subsection (b) confers federal jurisdiction over cases “against a State (as an employer) or a private employer commenced by the United States” and over actions “against a private employer by [any] person.” 38 U.S.C. § 4323(b)(1) and (3). The subsection also grants State courts jurisdiction over cases brought by any person against a State as an employer. 38 U.S.C. § 4323(b)(1)(3).
Section 4324 of USERRA applies where the employer is a “Federal executive agency” (a phrase defined at 38 U.S.C. § 4303(5) to exclude the FBI and other intelligence community agencies mentioned in 5 U.S.C. § 2302(a)(2)(c)(ii)). Section 4324 does not authorize a private USERRA action against the Federal Government, as an employer, in federal district court; rather, it confers jurisdiction upon the Merit Systems Protection Board (“MSPB”). See 38 U.S.C. § 4324(b); see also Yates v. MSPB, 145 F.3d 1480, 1483 (Fed.Cir.1998). The MSPB is authorized to determine whether a Federal executive agency has complied with USERRA and, if necessary, to compel that agency’s compliance with the statute. See 38 U.S.C. § 4324(c)(2) (Supp.1999). Decisions of the MSPB are subject to review in the Court of Appeals for the Federal Circuit. See 38 U.S.C. § 4324(d).
Section 4325 of the statute applies to “any person who alleges that the reemployment of such person” by an agency referred to in 5 U.S.C. § 2302(a)(2)(c)(ii), violated USERRA. 38 U.S.C. § 4325(a)(1). However, unlike section 4323, section 4325 does not authorize covered employees to commence an action in federal or state court; unlike section 4324, section 4325 does not authorize a complaint to the MSPB, subject to appellate review. Section 4325 provides only that employees of federal intelligence community agencies may pursue reemployment rights by submitting a claim to the inspector general of the agency. See 38 U.S.C. § 4325(b). Section 4315(c)(3) provides that the agency’s initial decision regarding employment “shall not be subject to judicial review,” and section 4325(b) provides that when an employee submits a grievance regarding that decision to the agency inspector general the inspector general “shall investigate and resolve the allegation pursuant to procedures prescribed by the head of the agency.” 38 U.S.C. § 4325(b) (emphasis added). The section prescribes no further review of any kind. Although section 4315 states that except as specified in that section, “nothing [in the act] shall be construed to exempt any [intelligence] agency” from the act’s “substantive” provisions, 38 U.S.C. § 4315(d)(1), the act does not empower *373 courts to enforce the act’s substantive provisions against the agencies. See also 38 U.S.C. § 4315(a) (“The head of each [intelligence] agency ... shall prescribe procedures for ensuring that the rights under this chapter apply to the employees of such agency.”)
Thus, while section 4323 of USERRA expressly authorizes a civil enforcement action against state and private employers, and section 4324 allows review by the Courts of Appeal of MSPB decisions concerning certain federal agencies, section 4325 omits a similar civil enforcement scheme for FBI employees.
Furthermore, in United States v. Fausto, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), a case which resembles the case at bar, the Supreme Court held that the Civil Service Reform Act of 1978 (CSRA), Pub.L. 95-454, 92 Stat. 1111, et seq., precluded judicial review of suspensions of nonpreference excepted service federal employees. The Court reasoned:
The comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review ... combine to establish a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action [at issue].
Id. at 448, 108 S.Ct. 668. Because USER-RA carefully addresses the rights of federal intelligence agency employees, yet does not include them in provisions for judicial review, we believe that judicial review of plaintiffs’ claims is precluded by USERRA.
2. Legislative History
An analysis of the legislative .history only confirms our conclusion that Congress intended to preclude judicial review of the FBI’s compliance with USERRA. In September 1991, a version of USERRA which provided for enforcement against federal agencies by the MSPB was under consideration by the Senate. See S.Rep. No. 102-203 (1991), reprinted in 1991 WL 243411 (Leg.Hist.). Members of the federal intelligence community (“IC”) agencies (i.e., the Central Intelligence Agency, the FBI, the National Security Agency, and the Defense Intelligence Agency) objected to the proposed legislation, observing that “[t]hese proposed enforcement mechanisms therefore pose ... significant national security concerns.” Letter from William H. Webster, Director of Central Intelligence, to Honorable Alan Cranston, Chairman, Committee on Veterans’ Affairs, dated June 11, 1991, reprinted in S.Rep. No. 202-203 at 111 (1991).
Specifically, the IC agencies maintained that the legislation’s provision for external enforcement by the MSPB would be “inconsistent with the current legal framework, which protects from outside review the hiring and firing decisions in the national security context and existing IC agency personnel practices and procedures in national security matters.” Id. Observing the importance of maintaining “necessary flexibility in hiring/firing decisions made in the interest of national security,” and expressing a preference for “internal procedural safeguards,” the IC agencies proposed amending USERRA so as to “relieve them from the law’s external enforcement mechanisms.” 1991 WL 243411, at 274-75.
In response to the IC’s concerns, the Senate proposed new language for USER-RA which ultimately evolved into sections 4315 and 4324 of the Act. See Joint Explanatory Statement on H.R. 995 Pub.L. 103-353, 103rd Cong., 2d Sess., reprinted in 1994 U.S.C.C.A.N. 2500. Based on this legislative history, we believe that in amending USERRA, Congress clearly intended to insulate the military service policies of the IC agencies from external review.
Plaintiffs argue that defendants have failed to dispel the “presumption” favoring judicial review, or in the alterna *374 tive that due to the fact that USERRA pertains to veterans, the Act should be liberally interpreted to permit judicial review. We have considered the above arguments and find them to be without merit. Accordingly, we hold that USERRA does not provide federal courts with subject matter jurisdiction to hear cases involving the FBI’s military service policy.
CONCLUSION
For the above reasons, the judgment of the district court is affirmed.
Affirmed.

. All other FBI employees are free to join the Reserve in any capacity and receive all the benefits and compensation which such service provides.