**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JOHN C. PARKINSON, | DOCKET NUMBER |
| Appellant, | SF-0752-13-0032-I-2 |
| v. | |
| DEPARTMENT OF JUSTICE, | DATE: October 10, 2014 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Jesselyn Radack and Kathleen McClellan, Washington, D.C., for the
    appellant.

Celeste M. Wasielewski, Esquire, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member
Vice Chairman Wagner issues a separate dissenting opinion.

**FINAL ORDER**

¶1      The appellant has filed a petition for review and the agency has filed a cross
petition for review of the initial decision, which affirmed his removal from his
position with the Federal Bureau of Investigation (FBI).  Generally, we grant
petitions such as these only when:  the initial decision contains erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law.  Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions.  In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that neither party has established any basis under section 1201.115 for granting the petition or cross petition for review. Therefore, we DENY the petition for review and the cross petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2 The appellant, a preference-eligible veteran, worked for the FBI as a Special Agent in the agency's Sacramento, California office. Initial Appeal File (IAF), Tab 6 at 39.[2] The appellant was a team leader and in this capacity was responsible for the preparation of a leased facility for usage in undercover operations. *Id*. at 62-63; Hearing Transcript (HT) at 10. As part of the lease agreement, the facility's landlord agreed to provide an amount of funds to be used for tenant improvements. HT at 99-100. In August 2008, the appellant was removed as team lead for the project. *Id*. at 10. In 2009, the agency's Office of the Inspector General (OIG) commenced an investigation regarding the

---

[2] Unless otherwise specified, all file references will be to the appeal file MSPB Docket No. SF-0752-13-0032-I-2. File references to appeal file MSPB Docket No. SF-0752-13-0032-I-1 will be referenced as IAF I-1 and the appropriate tab.

appellant's alleged misuse of the tenant improvement funds for the facility build-out.  IAF, Tab 6 at 98.

¶3        As a result of the investigation, the agency's Office of Professional Responsibility (OPR) proposed the appellant's removal based on four charges: (1) theft, (2) unprofessional conduct - on duty, (3) obstruction of the OPR process, and (4) lack of candor.  *Id*. at 62.  The appellant provided an oral reply to the deciding official.  IAF, Tab 43.  The deciding official reviewed the evidence, sustained all four charges, and directed the appellant's removal.  IAF, Tab 6 at 42.  The appellant initiated a Board appeal challenging his removal, claiming violation of due process, and raising affirmative defenses of whistleblower reprisal and discrimination based on his service in the military under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA).  IAF I-1, Tab 1 at 2, 5, 9-10.  The administrative judge granted the agency's objection to the appellant's affirmative defenses of whistleblower retaliation and violation of USERRA and dismissed them.  IAF, Tab 22 at 1-3.  The administrative judge reasoned that an FBI employee cannot raise a whistleblower reprisal or a USERRA claim to the Board.  *Id.*  After conducting a hearing and allowing the parties to submit written closing statements, the administrative judge sustained the two charges of obstruction and lack of candor and affirmed the agency's removal decision.  IAF, Tab 52, Initial Decision (ID) at 1.

¶4        The appellant has filed a timely petition for review of the initial decision.  Petition for Review (PFR) File, Tab 1.  The agency has responded to the petition for review and filed a cross petition for review, challenging the administrative judge's findings that the agency did not prove its charges of theft and unprofessional conduct.  PFR File, Tab 3 at 21, 24.

<u>The administrative judge properly sustained the charge of obstruction of the OPR process.</u>

¶5    The appellant argues that the administrative judge erred in sustaining the charge of obstruction of the OPR process.  PFR File, Tab 1 at 16.  According to the appellant, the agency both failed to prove his intent to obstruct and that his actions, in fact, did obstruct the process.  *Id*. at 17-19.  The appellant also alleges that the OIG investigation is not part of the OPR process because the agency's OIG is an independent office from the FBI's OPR.  *Id*. at 19.

¶6    We agree with the administrative judge that the agency proved this charge.  The evidence in the record supports the administrative judge's conclusion that the appellant intended to influence the OPR process when he met with the landlord and a member of his staff to agree on why the landlord wrote a check directly payable to the appellant.  ID at 8-10.  The appellant testified at the hearing on this charge as follows, "My intent was to sit down with [the landlord and a member of landlord's staff] and look at the documents which are appended to [the landlord's statement] and come to a meeting of the minds as to what actually occurred."  HT at 29.  The appellant met with the landlord to review and draft for the landlord a statement regarding expenses incurred nearly 3 years prior.  IAF, Tab 39 at 33 of 43.  The appellant drafted the document and worked with the landlord's staff member to type it up for the landlord's signature.  *Id*. at 31 of 43.  This meeting occurred during the course of the OIG's investigation into the appellant's activities during the office build-out, and the appellant was not part of the OIG investigative team.  HT at 157; IAF, Tab 6 at 98, 100.  Contrary to the appellant's argument, we find that the appellant did intend to influence the investigation as referenced by his hearing testimony that he intended to meet with the landlord so they could reach a common version of what actually occurred.  PFR File, Tab 1 at 17; HT at 29.

¶7    The appellant argues that the agency was required to prove that he actually obstructed the OPR process to prove the charge.  PFR File, Tab 1 at 18-19.  We

disagree. The agency code cited in the proposal notice as the basis for the charge provides that "an employee must refrain from '[t]aking any action to influence, intimidate, impede or otherwise obstruct the OPR process.'" IAF, Tab 6 at 51, 70. Actual success in obstructing the process is not required. Therefore, if the agency proves by preponderant evidence that the appellant attempted to obstruct the OPR process, then the agency has proven the charge. *See Parbs v U.S. Postal Service*, 107 M.S.P.R. 559, ¶ 8 (2007) (the agency is required to prove the charge as it is set out in the notice of proposed removal, and the charge is construed by examining the structure and language of the proposal and decision notice). Regardless, looking at the hearing transcript, it appears that the appellant, in fact, did obstruct the process. Less than 3 months after the landlord signed the statement that the appellant drafted, neither he nor his former bookkeeper could recall why a check for $1,215.67 was made out to the appellant. IAF, Tab 39 at 11 of 43. This contradicted the representation in the landlord's prior statement that this money was "to cover the cost of installing interior doors at the building." *Id.* at 33. Thus, we find that the evidence proves that, more likely than not, the appellant's actions prevented OIG from obtaining the landlord's untainted recollections.

¶8    Finally, the deciding official testified that the OIG investigation is the investigatory part of the OPR process because OPR does not investigate cases. HT at 140-42. Although the appellant contends on review, as he did below, that the OIG and OPR processes are distinct, he has provided no evidence to challenge the deciding official's testimony on this issue. IAF, Tab 38 at 14-18; PFR File, Tab 1 at 19; *see Castellanos v. Department of the Army*, 62 M.S.P.R. 315, 320-21 (1994) (declining to distinguish between the formal or informal stages of the equal employment opportunity (EEO) process for purposes of determining whether the appellant attempted to influence an EEO investigation). The appellant is correct that the OIG and OPR are separate organizational units within the Department of Justice; however, the fact that the organizations are separate

units does not mean that OPR cannot rely on the OIG investigation as part of its process. PFR File, Tab 1 at 19. We agree with the administrative judge that the agency proved the obstruction charge. ID at 8-9.

The administrative judge properly sustained the charge of lack of candor.

¶9 The administrative judge determined the agency's lack of candor charge involved four different statements and considered each one as a separate specification.[3] ID at 14. The administrative judge sustained only two of the specifications but sustained the charge overall. ID at 16-18. The appellant argues that the administrative judge erred in sustaining the lack of candor charge. PFR File, Tab 1 at 8. Neither party has sought review of the two specifications that the administrative judge did not sustain. PFR File, Tabs 1, 3. Based on our review of the record, we find no error with the administrative judge's finding on these specific specifications and adopt them as the Board's findings.

¶10 The appellant argues that he did not lack candor when he told the OIG investigator that he asked the landlord not to provide receipts to the FBI, versus telling the landlord not to do so. PFR File, Tab 1 at 10. The appellant also contends that he did not lack candor when he informed the OIG investigator that the landlord approved all purchases from the tenant improvement funds. *Id*. at 13.

¶11 The U.S. Court of Appeals for the Federal Circuit has found that, "Lack of candor and falsification are different, although related, forms of misconduct." *Ludlum v. Department of Justice*, 278 F.3d 1280, 1283-84 (Fed. Cir. 2002). To establish falsification, an agency needs to show that the employee made an

---

[3] The appellant argues that the administrative judge improperly analyzed the lack of candor charge as containing four, rather than three, specifications. PFR File, Tab 5 at 9. However, the administrative judge did not sustain the specification that the appellant claims should not have been considered. ID at 18. We find that the outcome of this specification does not affect the outcome of the appeal as two other specifications were sustained, thereby sustaining the charge. *See Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990).

affirmative representation and needs to prove an intent to deceive. *Id*. at 1284. Conversely, lack of candor is a "broader and more flexible concept." *Id*. Although deception is an element of the lack of candor charge, "intent to deceive" is not. *Id*. at 1284-85. The appellant alleges that the element of deception applies only to "material facts," as opposed to "tangential o[r] semantic facts," but cites no legal authority in support of this argument. PFR File, Tab 1 at 9. We reject the appellant's argument. Lack of candor is a broad and flexible concept that "may involve a failure to disclose something that, in the circumstances, should have been disclosed in order to make the given statement accurate and complete." *Ludlum*, 278 F.3d at 1284.

¶12    During the appellant's OIG interview, which was made under oath, he specifically denied that he "told" the landlord not to provide the receipts to the FBI, claiming that he "asked" him not to do so. IAF, Tab 39 at 14 of 55, 46 of 66. However, at the hearing, he testified that he "directed" the landlord to provide the receipts to the OIG and not to the FBI. HT at 16. On review, the appellant argues that his use of the word "direct" was "not to mean that he gave an order to the landlord, but that [he] pointed the landlord to the OIG investigator." PFR File, Tab 1 at 10. This claim is contrary to the appellant's own testimony, stating "I provided him with the agent['s card], . . ., directed him to provide the documents to OIG rather than—or not the FBI." HT at 16. Further, the landlord provided a written statement during the investigation that he did not provide the receipts to the FBI because the appellant "told him not to," and the appellant told him that he should instead provide the receipts to OIG when it requested them. IAF, Tab 39 at 22 of 43. The landlord's former office manager also provided the OIG a statement during the investigation in which she stated that the appellant told her not to provide the receipts to the FBI and to "put them off for a while." *Id*. at 26 of 43. She provided this same testimony at the hearing and further added that the appellant told her to provide the receipts to OIG. HT at 132-33.

¶13    We agree with the administrative judge that the appellant's OIG statement was not accurate. ID at 14. The appellant's hearing testimony is consistent with the unrebutted testimony and statements of the landlord and office manager that he told them not to give the receipts to the FBI but instead told them to provide the receipts to OIG. HT at 16, 132-33; IAF, Tab 39 at 22, 26 of 43. There is no evidence in the record that supports the appellant's OIG statement that this was merely a request and that he did not have any influence over the landlord's actions. We find that the appellant's statement to OIG under oath was not a complete and accurate disclosure of his conversations with the landlord and office manager. Therefore, we affirm the administrative judge's finding that the appellant lacked candor regarding his direction to the landlord and office manager to provide the build-out receipts to the OIG.

¶14    The second specification is a much closer call, as referenced by the administrative judge. ID at 16. The appellant argues that the administrative judge erred in finding lack of candor in his statement that the landlord approved the spending of all tenant improvement funds. PFR File, Tab 1 at 13. The appellant argues that whether the landlord approved the funds before or after the money was spent was not relevant because the landlord always paid the invoices. *Id*. We agree with the administrative judge that the appellant's statement provides an appearance of pre-approval by the landlord of the expenses. ID at 16-17. After stating that the landlord approved all expenses, the appellant continued his OIG statement stating that the landlord "was the sole arbiter and had sole discretion on the use and application of these funds to his property." IAF, Tab 39 at 26-27 of 55. The appellant's statement was contradicted by the landlord, who testified that he never approved any expenditure in advance and had no input on how the funds were spent. HT at 100; IAF, Tab 39 at 22 of 43. As noted by the administrative judge, a more complete statement would reflect that the landlord ratified all spending after-the-fact, and the appellant's failure to provide such a statement lacked candor and did not reflect the landlord's lack of

involvement in the expenditures.  ID at 16-17.  Therefore, we find the appellant engaged in a lack of candor in his statement and affirm the administrative judge's finding on this specification.

¶15    The appellant also argues that the charge was not proven because the agency only proved two of the four specifications or 50 percent, which is lower than the 51 percent needed under the preponderance of evidence standard.  PFR File, Tab 1 at 14.  In addition, the appellant alleges that the specifications not sustained were more serious allegations of misconduct and should be weighted more than the two proven specifications.  *Id*. at 14-15.  An agency may use more than one event or specification to support a single charge.  *Burroughs*, 918 F.2d at 172.  In those situations, "proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge."  *Id*.  We therefore find no error with the administrative judge's examining the specific instances of lack of candor as separate specifications in determining the charge.  *See Alvarado v. Department of the Air Force*, 103 M.S.P.R. 1, ¶ 14 (2006) (a charge that is based on more than one act can be divided into multiple specifications or charges, each corresponding to the separate acts alleged), *aff'd sub nom. Alvarado v. Wynne*, 626 F. Supp. 2d 1140 (D.N.M. 2009), *aff'd sub nom Alvarado v. Donley*, 490 F. App'x 932 (10th Cir. 2012).  Here, the agency proved two specifications, so it has proven its lack of candor charge.

The agency did not prove the charge of theft.

¶16    In its cross petition for review, the agency argues that the administrative judge erred in not sustaining the theft charge.  PFR File, Tab 3 at 21.  The agency contends that it had possession of furniture, that the appellant removed it from the leased space, and that having possession gave the agency the right to use the furniture during the term of the lease, making the appellant's action theft.  *Id*. at 21-22.  The agency maintains that the appellant intended to permanently deprive the agency of the use of the furniture as demonstrated by a fake purchase

agreement he drafted, and the fact that he never made any attempt to return the furniture to the agency. *Id*. at 23-24.

¶17    The administrative judge found the appellant did not have the state of mind required for theft because he believed all the furniture belonged to the landlord, and the agency had no legal interest in it. ID at 6. The administrative judge found that the appellant believed the landlord was under no obligation to let the agency continue using the furniture. ID at 7-8. In addition, the administrative judge found that, because the landlord owned the furniture and the appellant stored the furniture in another warehouse owned by the landlord, he did not steal the furniture. ID at 6.

¶18    To sustain a charge of theft, an agency must prove a taking and possession of another's property in a manner inconsistent with the owner's rights and benefits, with an intent to permanently deprive the owner of possession or use of his property. *Nazelrod v. Department of Justice*, 50 M.S.P.R. 456, 460 (1991), *aff'd*, 43 F.3d 663 (Fed. Cir. 1994). Intent is a state of mind which is generally proven by circumstantial evidence. *Messersmith v. General Services Administration*, 9 M.S.P.R. 150, 157 (1981).

¶19    The agency had a possessory interest in the furniture. The victim of a theft does not have to be the owner of the property, only in possession of it. *See Morissette v. United States*, 342 U.S. 246, 271 (1952) (defining stealing to mean the taking away from one in lawful possession without right with the intention to keep wrongfully (citation omitted)); *Levin v. United States*, 338 F.2d 265, 268 (D.C. Cir. 1964) (holding that larceny is the felonious taking and carrying away of anything of value, and that ownership of the property does not matter); *People v. Edwards*, 236 P. 944, 950 (Cal. Ct. App. 1925), *disapproved on other grounds*, *In re Estrada*, 408 P.2d 948, 953-54 (Cal. 1965) (holding that ownership and possession may be regarded as synonymous terms for larceny); *People v. Davis*, 31 P. 1109, 1109 (Cal. 1893) (holding that the fact that the taken property was in possession of the victim was sufficient to show ownership). Here, the agency had

possession of the furniture as it was in the office space that it had leased from the landlord, and the landlord intended the furniture to be used in the space under the terms of the lease. HT 107-08. Therefore, the agency did have a legal interest in the furniture and the appellant erred in assuming otherwise.

¶20        However, the agency has not proven that the appellant intended to permanently deprive it of the possession or use of the property. The administrative judge found that the appellant honestly, if mistakenly, believed that all the furniture belonged to the landlord, and the FBI had no interest in it. ID at 6. Ignorance or mistake of law can negate the existence of specific intent, as required in the agency's charge. *People v. Vineburg*, 177 Cal. Rptr. 819 (Cal. Ct. App. 1981). The appellant's belief must be claimed to be held in good faith. *Id*. We agree with the agency that the appellant's creation of a fake purchase agreement and receipt raises some questions about his good faith belief. PFR File, Tab 3 at 23. However, the appellant testified that his purpose was to assist the landlord in justifying the removal of the furniture and storage in another facility if the agency asked for the furniture back. HT at 32-34. Because the appellant has shown he had a good faith belief that the agency had no legal interest in the furniture, the agency has not proven that the appellant intended to permanently deprive it of the possession or use of the property. Therefore, the agency has not proven its charge of theft, and we adopt the administrative judge's finding on this issue as the Board's final decision.

The agency did not prove the charge of unprofessional conduct while on duty.

¶21        The agency argues in its cross petition for review that the administrative judge erred in finding it did not prove the charge of unprofessional conduct while on duty. PFR File, Tab 3 at 24. It asserts that, because the appellant was still assigned to the undercover team when he engaged in the unprofessional conduct set forth in specifications one and two, he was necessarily "on duty." *Id*. at 24-26. We disagree.

¶22    An agency is not required to affix a label to a charge but may simply describe actions that constitute misbehavior in narrative form in its charge letter; however, if the agency chooses to label an act of alleged misconduct, then it must prove the elements that make up the legal definition of the charge, if any. *Hollingsworth v. Department of the Air Force*, 121 M.S.P.R. 397, ¶ 4 (2014). The Board will not sustain an agency action on the basis of charges that could have been brought but were not. *Rodriguez v. Department of Homeland Security*, 117 M.S.P.R. 188, 192 (2011). The agency charged the appellant with unprofessional conduct based on FBI offense code 5.22, which defines unprofessional conduct as occurring "while on duty." IAF, Tab 6 at 51. Based on the language of the agency's charge, the agency was required to show that the appellant was on duty when he engaged in each instance of unprofessional conduct. *See Doherty v. Department of Transportation*, 13 M.S.P.R. 274, 278 (1982) (finding that conduct committed while an appellant was on his coffee break could not sustain a charge of careless work performance because he was not on duty).

¶23    The administrative judge found that the appellant engaged in unprofessional conduct in both specifications; however, he also found that the agency failed to prove the conduct occurred when the appellant was on duty. ID at 11. The arguments and evidence that the agency cites on review go to the issue of whether the appellant was still on the undercover team at the time of the unprofessional conduct. PFR File, Tab 3 at 24-26. However, the agency has not put forward any evidence to show that the appellant was actually on duty when he encouraged the landlord not to cooperate with the FBI investigation or when he created a fake purchase contract and receipt to make it appear as if he bought the furniture that he removed from the leased space. Therefore, even though we agree with the administrative judge that the appellant engaged in unprofessional conduct, the agency did not prove that he engaged in the conduct while on duty, as required by the language of its charge.

¶24     The agency does not allege any specific errors regarding the administrative judge's findings that it did not prove specifications three and four of the unprofessional conduct charge on review. PFR File, Tab 3 at 24-26. We have reviewed the administrative judge's findings on these specifications and find no error with the decision. ID at 11-13. We therefore adopt those findings as the Board's final decision and affirm that the agency did not prove its charge of unprofessional conduct.

<u>The administrative judge properly dismissed the appellant's affirmative defenses of whistleblower retaliation and violation of USERRA.</u>

¶25     Neither party has challenged in its petition or cross petition for review the administrative judge's finding that the appellant did not prove his claim that the agency violated his due process rights. ID at 19. We find no reason to disturb the administrative judge's finding on this issue and adopt it as the Board's final decision.

¶26     The appellant argues on review that the administrative judge erred in dismissing both his defenses of whistleblower reprisal and discrimination based on his military service under USERRA. PFR File, Tab 1 at 22-24. The appellant alleges that his affirmative defenses are based on his removal being in reprisal for exercising his legal rights, therefore making the agency's action "not in accordance with law." *Id*. at 22-25. We do not agree.

¶27     The Board's jurisdiction is not plenary; it is limited to those matters over which it has been given jurisdiction by law, rule, or regulation. *Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985). The Board found in *Van Lancker v. Department of Justice*, 119 M.S.P.R. 514, ¶ 11 (2013), that FBI employees are excluded from bringing a whistleblower retaliation claim before the Board. The appellant argues that our decision in *Van Lancker* only prohibits FBI employees from raising a whistleblower affirmative defense when it is based on a claim that the agency engaged in a "prohibited personnel practice." PFR File, Tab 1 at 22 (citing 5 U.S.C. § 7701(c)(2)(B)). He reasons that he can raise

his affirmative defense on the basis, instead, that the alleged whistleblower reprisal was "not in accordance with law." PFR File, Tab 1 at 22-23 (citing 5 U.S.C. § 7701(c)(2)(c)). We decline to read our decision in *Van Lancker* so narrowly.

¶28 Congress did not authorize the Board to hear whistleblower claims by FBI employees. *Van Lancker*, 119 M.S.P.R. 514, ¶¶ 11-12. FBI employees who allege reprisal for engaging in whistleblowing activity are covered under 5 U.S.C. § 2303, which provides that enforcement of the FBI whistleblower protection provisions will be consistent with provisions in 5 U.S.C. § 1221, but does not provide for appeal rights to the Board. Rather, the procedures for redress are to be established by the Attorney General to ensure internal resolution. *Van Lancker*, 119 M.S.P.R. 514, ¶ 14 (citing 5 U.S.C. § 2303(b), as well as the regulatory history for the applicable Department of Justice regulations). Because the Board does not have the authority to hear claims under 5 U.S.C. § 2303, the administrative judge properly dismissed the appellant's affirmative defense of reprisal for whistleblowing.

¶29 Regarding his USERRA affirmative defense, the appellant argues that it would be contrary to congressional intent and our prior holding in *Butler v. U.S. Postal Service*, 10 M.S.P.R. 45 (1982), if the Board allowed a preference-eligible FBI employee to bring an appeal but denied him the ability to make a USERRA affirmative defense. PFR File, Tab 1 at 24-25. In *Butler*, we held that a U.S. Postal Service employee may raise a race discrimination affirmative defense, even though the U.S. Postal Service was excluded from the definition of agencies subject to the provisions of 5 U.S.C. § 2302 concerning prohibited personnel practices. *Butler*, 10 M.S.P.R. at 48 However, in *Van Lancker* we noted the distinction between the U.S. Postal Service and the FBI in the context of an affirmative defense of whistleblower reprisal, noting Congress' desire to adjudicate these claims internally within the Department of Justice, and we

believe the same rationale is applicable for the present USERRA affirmative defense.  *Van Lancker*, 119 M.S.P.R. 514, ¶ 14.

¶30        Congress specifically excluded the FBI from the list of agencies for purposes of filing a USERRA appeal with the Board.  *Erlendson v. Department of Justice*, 121 M.S.P.R. 441, ¶ 6 (2014) (citing 38 U.S.C. § 4303(5) (defining federal agency for purposes of USERRA to exclude agencies referred to in 5 U.S.C. § 2302(a)(2)(C)(ii), which lists the FBI among other agencies)); *Hereford v. Tennessee Valley Authority*, 88 M.S.P.R. 201, ¶ 10 (2001) (USERRA defines federal executive agencies to include executive agencies as defined in 5 U.S.C. § 104, other than intelligence agencies).  Employees of the excluded executive agencies, including FBI employees, are covered for USERRA purposes under 38 U.S.C. § 4315, which provides that agency heads are to prescribe appropriate remedial procedures.  Again, as with whistleblower reprisal claims, Congress has provided for a separate remedial process to keep USERRA claims out of the jurisdiction of external tribunals, such as the Merit Systems Protection Board.  *See Dew v. United States*, 192 F.3d 366, 372 (2d Cir. 1999) (observing that it is clear from the structure of USERRA that Congress "inten[ded] to preclude judicial review of USERRA claims by the employees of the intelligence community").  Therefore, consistent with our decisions in *Erlendson* and *Van Lancker*, we find that the administrative judge properly dismissed the appellant's USERRA defense because the Board lacks jurisdiction over such claims from FBI employees.

The penalty of removal is reasonable based on the sustained charges.

¶31        When, as here, the Board sustains fewer than all of the agency's charges, the Board will mitigate the agency's penalty to the maximum reasonable penalty so long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges.  *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999); *see*

*Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 308 (1981) (when not all of the charges are sustained, the Board will carefully consider whether the sustained charges merited the penalty imposed by the agency). Here, the deciding official indicated in her decision letter that she would have removed the appellant based on the lack of candor charge. IAF, Tab 6 at 54.

¶32 The appellant argues on review that the penalty of removal exceeded the tolerable limits of reasonableness for the sustained charges. PFR File, Tab 1 at 19. The appellant alleges that the misconduct in the lack of candor cases cited by the administrative judge involved more serious misconduct. *Id.* at 20; ID at 21-22. Finally, the appellant argues that the case of *Ludlum v. Department of Justice*, 87 M.S.P.R. 56 (2000), *aff'd*, 278 F.3d 1280 (Fed. Cir. 2002), supports his mitigation argument. PFR File, Tab 1 at 21.

¶33 In evaluating a penalty, the Board will consider, first and foremost, the nature and seriousness of the misconduct and its relationship to the employee's duties, position, and responsibilities. *Gaines v. Department of the Air Force*, 94 M.S.P.R. 527, ¶ 9 (2003). Law enforcement officers, like the appellant, are held to a higher standard of honesty and integrity. *Prather v. Department of Justice*, 117 M.S.P.R. 137, ¶ 36 (2011). The appellant had a prior disciplinary record of a 7-day suspension for misuse of a government credit card that was considered as an aggravating factor. ID at 21. We agree with the administrative judge and the agency that the seriousness of the appellant's conduct warranted his removal.

¶34 We also agree with the administrative judge that *Ludlum* does not support the appellant's argument for mitigation of the penalty. ID at 22. In *Ludlum*, the Board mitigated an FBI special agent's removal for lack of candor to a 120-day suspension. 87 M.S.P.R. 56, ¶ 33. As explained by the administrative judge, the appellant in *Ludlum* did not have a prior disciplinary record versus the appellant in the present appeal. ID at 22. The appellant in *Ludlum* also acknowledged that he was uncertain of the exact number of times he had misused a government

vehicle and that his statement could be inaccurate due to faulty memory, again something not claimed by the present appellant. ID at 22. In addition, the Board, in *Ludlum*, commented on the numerous letters submitted by coworkers and supervisors to the deciding official in support of mitigating the penalty for that individual as evidence of rehabilitation potential. *Ludlum*, 87 M.S.P.R. 56, ¶¶ 32-33; ID at 22. In the present appeal, the appellant has provided no comparable evidence to demonstrate rehabilitation potential. Therefore, we find the penalty of removal to be within the limits of reasonableness for the sustained charges.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm.

Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD: _____
William D. Spencer
Clerk of the Board

Washington, D.C.

in

*John C. Parkinson v. Department of Justice*

MSPB Docket No. SF-0752-13-0032-I-1

¶1    I respectively dissent from the majority's determination that the administrative judge properly dismissed the appellant's affirmative defenses of whistleblower retaliation and violation of USERRA. I do so for the same reasons supporting my dissent in *Van Lancker v. Dept. of Justice*, 119 M.S.P.R. 514, 519 (2013). Citing the Board's longstanding precedent in *Butler v. U.S. Postal Service*, 10 M.SP.R. 45, 48 (1982), and *Mack v. U.S. Postal Service*, 48 M.S.P.R. 617, 621 (1991), for the principle that employees who have the right to appeal to the Board under 5 U.S.C. § 7701(a) have the same rights, I concluded that a preference-eligible FBI agent who has properly invoked the Board's jurisdiction to challenge an agency's adverse action is entitled to raise any affirmative defense set forth in 5 U.S.C. § 7701(c)(2), including that the action is based on a prohibited personnel practice as defined in 5 U.S.C. § 2302(b)(8) or is not in accordance with law. Similarly, here, I believe that the appellant, a preference-eligible FBI agent who has properly invoked the Board's jurisdiction in challenging his removal, is entitled to raise his claims of whistleblower retaliation and USERRA violation as affirmative defenses to this adverse action.

¶2    Accordingly, I would vacate the initial decision insofar as it found that the Board lacks jurisdiction over the appellant's claims of whistleblower retaliation and USERRA violation and remand this appeal with instructions to reopen the for

the purpose of allowing evidence and to make findings of fact and conclusions of law as to these two affirmative defenses.

_____
Anne M. Wagner
Vice Chairman